IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| RICHARD LEE WANN, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| ST. FRANCOIS COUNTY, MISSOURI, | ) | |
| and | ) | |
| V. KENNETH ROHRER, an individual, | ) | TRIAL BY JURY DEMANDED |
| St. Francois County Public Administrator, | ) | |
| And Former Temporary Guardian Ad Litem | ) | |
| of Richard Lee Wann, | ) | |
| and | ) | VERIFIED COMPAINT FOR: |
| EDWARD PULTZ, an individual, and | ) | |
| Attorney for Public Administrator | ) | First Cause of Action for Violation of |
| V. Kenneth Rohrer, | ) | Civil Rights, 42 U.S.C. §1983; |
| and | ) | Second Cause of Action for Violation of |
| BRICE SECHREST, an individual, and | ) | Civil Rights, 42U.S.C. §1985 (2); |
| Former Attorney for Richard Lee Wann, | ) | Third Cause of Action for Unlawful |
| and | ) | Imprisonment; |
| HON. SHAWN RAGAN McCARVER, | ) | Fourth Cause of Action for Unlawful |
| An individual, and Associate Judge for the | ) | Imprisonment by Chemical Restraint |
| Circuit Court of St. Francois County, | ) | and Battery; |
| Missouri, Probate Division, | ) | Fifth Cause of Action for Intentional |
| and | ) | Infliction of Emotional Distress; |
| FARMINGTON MISSOURI HOSPITAL | ) | Sixth Cause of Action for Negligent |
| CO., LLC, a Missouri Domestic Limited | ) | Infliction of Emotional Distress; and |
| Liability Company, | ) | Seventh Cause of Action for Declaratory |
| and | ) | Relief for Fraud on the Court |
| AHMAD ARDEKANI, M.D., | ) | |
| An individual, | ) | |
| and | ) | |
| NICOLE (NIKKI) ROTTER, MSW, | ) | |
| An individual, | ) | |
| and | ) | |
| AMERICARE AT MAPLEBROOK | ) | |
| ASSISTED LIVING, LLC, a Missouri | ) | |
| Domestic Limited Liability Company, | ) | |
| and | ) | |
| DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

COMES NOW Richard Lee Wann, Plaintiff, and alleges as follows:

### SUMMARY OF COMPLAINT

Plaintiff Richard Lee Wann (hereinafter referred to as "Richard") was admitted to Mineral Area Regional Medical Center (hereinafter referred to as "MARMC") the day of a scheduled colonoscopy. Instead of being released to return home, he was admitted to the geriatric ward based upon a false assessment of his mental state.

Thus began the nightmare of involuntary imprisonment in "locked down hospital facilities" for 8-1/2 months with chemical restraints; being given psychotropic drugs to which he did not consent which altered his mental state; the involuntary appointment of the St. Francois County Public Administrator as his Temporary Guardian and Conservator of his Estate; the looting of his savings by the Guardian by taking of money from his accounts to pay for the Guardian; the Guardian's attorney's fight against Richard's freedom; the facilities in which Richard was "locked down" or used medications to which he did not consent to alter his mental state or to sedate him, or both; and causing him to suffer both emotional distress and physical stress.

When Richard emerged, he was a physical and mental wreck due solely to the actions of the Defendants.

### I. PARTIES

1. Plaintiff Richard Lee Wann was a retired CEO/Chief Estimator of Ozark Steel Fabricators, Inc., a company with gross sales of approximately $50 million per year, having finally retired in 2011. At all times hereinafter Richard resided in the City of Desloge, St.

Francois County, Missouri, within the Eastern District of Missouri. In December 2014 Richard became a resident of Strathmore, California.

2.      Defendant St. Francois County, Missouri is a Second Class County located in the State of Missouri within the Eastern District of Missouri with a population of approximately 65,359 residents as of the 2010 Census. The County can be served by serving Harold Gallaher at 1 West Liberty Street, Annex Building, Suite 301, Farmington, Missouri 63640.

3.      Defendant V. Kenneth Rohrer (hereinafter referred to as "Rohrer"), Missouri Bar Number 22659, an individual, at all times herein relevant, was an elected public official (St. Francois County Public Administrator) within the Eastern District of Missouri. He can be served at his office at 1 West Liberty Street, Suite 102, Farmington, Missouri 63640.

4.      Defendant Edward Pultz (hereinafter referred to as "Pultz"), Missouri Bar Number 28731, an individual, at all times herein relevant, was the attorney for the Public Administrator V. Kenneth Rorer in the case of *In the Matter of Richard Lee Wann.* Pultz maintains an office at 400 North Washington, Suite 112, Farmington, Missouri 63640 in the Eastern District of Missouri.

5.      Defendant Brice Reed Sechrest (hereinafter referred to as "Sechrest"), Missouri Bar Number 59929, an individual. He was appointed by Judge Shawn Ragan McCarver to represent Richard Lee Wann. Sechrest maintains an office at 105 Science Street, Park Hills, Missouri 63601 in the Eastern District of Missouri.

6.      Farmington Missouri Hospital Company, LLC (hereinafter referred to as "FMHC"), is a Missouri Limited Liability Company. CT Corporation System is the registered agent of FMHC and can be found at 120 South Central Avenue, Clayton, Missouri 63105 in the

Eastern District of Missouri. At all times hereinafter FMHC was the owner or controlled Mineral Area Regional Medical Center (MARMC).

7.     Dr. Ahmad Ardekani is a licensed physician in the State of Missouri and can be found at 10004 Kennerly Road, Suite 310A, St. Louis, Missouri 63128. He was a psychiatrist with hospital privileges at MARMC on the geriatric unit.

8.     Defendant Nicole (Nikki) Rotter, MSW, an individual, at all times herein relevant, was a social worker with hospital privileges at MARMC, Geriatric Unit, and upon information and belief was an employee of MARMC. Nikki at all times herein relevant was located at Mineral Area Regional Medical Center, 1212 Weber Road, Farmington, Missouri 63640 in the Eastern District of Missouri.

9.     Defendant Americare at Maplebrook Assisted Living LLC is a Missouri limited liability company. The registered agent is CT Corporation System and can be found at 120 South Central Avenue, Clayton, Missouri 63105 in the Eastern District of Missouri. Defendant Americare at Maplebrook Assisted Living, LLC (hereinafter referred to as "Maplebrook"), at all times relevant was the assisted care facility in which Richard was confined to after leaving MARMC, Geriatric Unit. Maplebrook at all times herein relevant was located in Farmington, Missouri 63640 in the Eastern District of Missouri.

10.     Defendant The Honorable Shawn Ragan McCarver (hereinafter referred to as "McCarver") an individual, at all times herein relevant, was the Associate Judge in the Circuit Court of St. Francois County, Missouri, Probate Division, in the case of *In the Matter of Richard Lee Wann*. McCarver maintains an office at 1 North Washington Street, Suite 201, in Farmington, Missouri 63640 in the Eastern District of Missouri.

4

11. McCarver was the attorney for Robert Wann, the brother of the Plaintiff, in the probate matter *Pear Eunice Wann, Incapacitated-Disabled*, Case No. 24P069600996, in the Circuit Court of St. Francois County, Missouri, Probate Division, regarding conservator and guardianship issues of their mother. Robert Wann and Richard Lee Wann were adversaries.

12. In such capacity as attorney for Robert Wann, McCarver learned information about Richard, Robert, Theresa (Wann) Brown and Richard H. Wann, parties in the case of *In the Matter of Richard Lee Wann* from sources outside the case which prejudiced McCarver in the decision of making V. Kenneth Rohrer the temporary guardian and temporary conservator in the case of *In the Matter of Richard Lee Wann*.

13. Also, Judge McCarver is the first cousin of Darlene Wann, wife of Robert Wann, brother of Richard Lee Wann.

14. This double relationship required McCarver to disclose the relationships to Defendant and Defendant's attorney and to recuse himself from presiding over the Richard Lee Wann case. McCarver should have promptly transferred the case to the presiding judge of the circuit for reassignment in accordance with the procedures of Rule 51.05 (e) under Missouri Supreme Court Rule 51.07.

15. Missouri Supreme Court Rule 51.07 states as follows in relevant part:

"... **If the judge is interested or related to any party** or shall have been counsel in the civil action, or is recused for any reasons, **the judge promptly shall transfer the case to the presiding judge of the circuit for reassignment in accordance with the procedures of Rule 51.05(3)...**" (Emphasis added).

16. Other Missouri statutes and Missouri Supreme Court Rule 51.05 provided for the disqualification of McCarver in the case of *In the Matter of Richard Lee Wann* as follows:

Missouri Revised Statutes, Chapter 472, Probate Code – General Provisions, §472.060 states in relevant part:

> **"Disqualification of Judge.**
>
> 472.060. No judge of probate shall sit in a case in which the judge is interested, **or in which the judge is biased or prejudiced against any interested party**, in which the judge has been counsel or a material witness, **or when the judge is related to either party . . . "** (Emphasis added).

## II. JURISDICTION AND VENUE

17.     Jurisdiction exists under 28 U.S.C. §§1331 and 2201-02 to seek declaratory and other relief.

18.     Jurisdiction exists under 42 U.S.C. §1983 for violation of the rights protected under the First, Fifth, Sixth and Fourteenth Amendments, and for the extrinsic fraud of an officer of the Court upon the Court resulting in an adverse state court decision (see *Kougasian v. TSML, Inc.*, 359 F.3d 1136 (9th Cir. 2004).

19.     Jurisdiction exists under 42 U.S.C. §1985 (2) for violation of the rights protected under the First, Fifth, Sixth and Fourteenth Amendments.

20.     Jurisdiction exists under 28 U.S.C. §1332 as Richard presently is a resident of California, all defendants are residents of Missouri, and the amount in controversy is greater than $75,000.00.

## III. VENUE

21.     At all relevant times herein, Richard lived and conducted business in the Eastern District of Missouri.

22.     At all relevant times herein, Defendants maintained offices and/or conducted business in the Eastern District of Missouri.

23.     Transactions relevant to parties occurred in the Eastern District of Missouri.

## IV.  STANDING

24.       Standing exists in that Richard Lee Wann was directly injured by the actions of

Defendants.  Richard was directly physically injured by involuntarily being subjected to

psychotropic and other drugs causing damage to his brain.  Richard Lee Wann was physical and

psychologically injured by being involuntarily confined.  Richard was psychologically injured by

the direct change in his physical environment by being involuntarily confined.  Richard was

directly economically injured by the involuntary taking of funds from his bank accounts, the

involuntary seizing of his assets and making false claims on his Medicare insurance.  Richard

was directly injured by the involuntary loss of his First Amendment rights to petition the

government and access to the courts, his Fifth Amendment right to due process losing property,

his Sixth Amendment right to counsel, and his Fourteenth Amendment right to due process

amongst other rights.

## V. ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.       Events Prior to Unlawful Confinement

25.       **May 3, 2013** – Richard was scheduled for a colonoscopy at Mineral Area

Regional Medical Center with Dr. Weber.  Richard collapsed at home and was taken by

ambulance to MARMC. Bob Clayborne called 911.  Richard was admitted at 12:44 p.m. to the

ER at MARMC.  The collapse was attributed to "weakness general" according to the Admittance

Record of the ER at MARMC Initial Assessment Form and entered into the computer by Dr.

Damba, emergency admitting physician.

26.       Four evaluations were performed and Richard was found to be "A&O x3 [alert

and oriented as to time, place and person] according to the Admittance Record in the emergency

room and the MARMC Initial Assessment Form electronically signed by Emily Garcia.

27.     Richard was diagnosed with "early UTI [urinary tract infection], hypokalemia [when potassium in blood is lower than normal], altered mental status" according to the Admittance Record in the emergency room and the MARMC Initial Assessment Form by Dr. Damba, emergency admitting physician.

28.     Richard was admitted at 16:21 to MARMC Nursing Care; "Attending Dr. Forsythe will admit patient" according to the Admittance Record in the emergency room and the MARMC Initial Assessment Form by Dr. Damba, emergency admitting physician.

29.     **May 5, 2013  9:00 a.m.**  Richard was "A&O x3".  Physician notes by Dr. Weber. During the date Richard and Robert signed the consent for upper GI testing according to the Operating Room/Nursing Consent for Operation or Other Procedure.

30.     **May 6, 2013  7:45-7:56 a.m.**  Procedure for upper GI performed according to the Anesthesia Record entered by Dr. Weber.

31.     **May 6, 2013  9:21 a.m.**  Patient Assessment Report states that Richard was "oriented as to person, place and time", Richard needed minimal assistance for walking; the length of time to recover completely was one to two weeks, and discharge considerations should include home help".  Entered by physical therapist Julie Hosking and Dr. Forsythe.

32.     **May 6, 2013  4:40 p.m.**  Richard and Robert signed consent for colonoscopy.

33.     **May 7, 2013  7:38 – 8:27 a.m.**  Colonoscopy performed according to the Anesthesia Record entered by Dr. Weber.  9:30, 9:45, 10:00, 10:15 a.m. Vital Sign sheet "A&O) x3".

34.     **May 8, 2013  12:29 a.m.**  Progressive Note "will continue medications of antibiotics and continue following patient with possible discharge in the morning."  Entered by Dr. Forsythe.

35.     **May 8, 2013  8:20 a.m.**  Telephone order by Dr. Forsythe/Karen Adams, RN  - An evaluation of Richard was done and a plan of care was developed and implemented.  Therapy was provided because he had some weakness.  Entered by Dr. Lum/Karen Adams, RN.

36.     **May 8, 2013  11:45 a.m.**  Telephone order "Discharge home.  Continue home meds."  Dr. Forsythe/Karen Adams, RN.  Discharge Summary: "He will be discharged today with his home medications and a follow up with primary care physician in 1 week."  Entered by Dr. Forsythe.

37.     **May 8, 2013  11:45 a.m.**  Discharge Summary: "He will be discharged today with his home medications and a follow up with primary care physician in 1 week."  Entered by Dr. Forsythe.

### B. Misinformation Caused Richard's Unlawful Confinement

38.     Dr. Forsythe's Physician  Progress Notes for **May 8, 2013 at 6:27 p.m.** show a meeting with Richard's sister-in-law, Darlene Wann (Robert's wife and McCarver's first cousin), in which she transmitted unverified information that did not exist in any hospital or doctor's records.  The unverified information was:

> **"Patient Richard with altered mental status – He's talking about his deceased parents as if they were still alive, he is talking about a home in Doe Run that he does not have.  His sister says she's notice a tremor of his hands but he is not exhibiting that now.  His family says he cannot be trusted to be at home alone** and I agree with that.  He needs a chest CT and a repeat blood count and these with [sic] hopefully be procured tomorrow **before we transfer to swing bed."**  (Emphasis added).

39.     **May 8, 2013  6:30 p.m.**  Orders for Treatment – blood count and liver profile ordered in a.m. chest CT, SWB; evaluated by Dr. Forsythe.

40.     **May 8, 2013  6:46 p.m.**  "Right lung density active".  Patient Problems Clinical History Profile; Mineral Area Hospital; Clinical Document Report, Patient No. 2351949 (Richard).

9

41.     Dr. Forsythe's Medicare billing from May 3, 2013 through May 9, 2013 shows three hospital in-patient care visits, typically 25 minutes per day in the period of May 6, 2013 through May 8, 2013.  Hospital records do not exist which show Doctor's visits to Richard in the section of Mineral Area Regional Medical Center in which Richard was admitted.

**C.     The Wrongful Admission of Richard to the Geriatric Ward (Behavior Health)**

42.     **May 9, 2013  4:05-4:06 a.m.**  Physical assessment entered by Michelle Mick, RN shows that Richard does not have any physical problems but physically "weak".  Neuro assessment needed.

43.     **May 9, 2013  8:09 a.m.**  Physical assessment entered by Linda Brewer, RN shows that Richard does not have any physical problems but physically "weak".  Neuro assessment needed.

44.     **May 9, 2013  10:05 a.m.**  Orders for Treatment: Telephone order by Dr. Lum "clarification CT chest".

45.     **May 9, 2015  10:05 a.m.**  Orders for Treatment:  Telephone order by Dr. Lum "Behavior Health Evaluation".

46.     **May 9, 2015  12:30 p.m.**  Orders for Treatment:  Telephone order by Dr. Lum "transfer [Richard] to Behavior Health".

47.     No billing from Dr. Lum to Medicare after **May 5, 2013** or for two25 minute visits on **May 4, 2013** and **May 5, 2013**,

48.     **May 9, 2013  12: 58 p.m.**  Discharge Planning Progress Summary entered in Mineral Area Regional Documentation Report to discharge Richard from hospital to "a psychiatric hospital or a psychiatric unit of a hospital".  Laura Wilson, R.N.

49.     Psychiatric hospital or psychiatric unit of a hospital was not the "swing bed" part of the hospital as ordered by Dr. Forsythe.  Mineral Area Regional Medical Services swing beds are on the first floor.  It provides rehabilitation and evaluations which include extended care beyond the hospital setting.

50.     Mineral Area Regional Medical Center geriatric unit was on the third floor.  It treated only patients 55 and older with substance abuse, alcohol abuse, prescription drug addiction, street drug addiction and suicidal intervention and treatment.

51.     **May 9, 2013  3:00 p.m.**  Behavior Health Inquiry Assessment Patient Assessment Report – "Seen per request of Karen per Dr. Forsythe for altered mental status.  He has been talking to his dead mother and having problems recalling events, address, where he lives."

52.     **May 9, 2013  4:00 p.m.**  Dr. Coe Admits Richard to geriatric unit as a precaution because of fall risk.  Admission classified as "voluntary".  Summary indicates nurse spoke to Richard, Dr. Coe who admits him to geriatric unit.  Electronically entered into computer **May 9, 2013  5:42 p.m.** by Marlene Wurst, R.N.

53.     The original Behavioral Health Evaluation on **May 9, 2013** does not claim any alcohol abuse or addiction, substance abuse or prescription drugs or street drugs in the evaluation for the admittance.  It also does not claim Richard has suicidal thoughts and needs observation and/or treatment.

54.     **May 9, 2013  4:00 p.m.**  Dr. Ardekani/Nurse Teri Ragsdale admit Richard to behavior health as a voluntary admission.  The diagnoses are hypokalemia, hypomagnesia, Code status "Full", condition guarded.  Dr. V. Damba consult for History and Physical, medical management.  Medications prescribed are Tylenol, MOM [Milk of Magnesia], Mylanta, Robitussin, Cepacol, Trazadone, Ativan, Zyprexa, Zydis, nicotine patch, Motrin, multivitamin.

11

Richard is certified as an inpatient psychiatric hospital admission needing necessary medical treatment which is expected to improve the patient's condition. The estimated 7-10 days of hospitalization is necessary for proper treatment of the patient.

55.     Dr. Ardekani had not seen the patient when he wrote the admission report and prescribed medications that did not relate to dementia and hallucinations.

56.     Medicare was billed and the admission was classified as Admission 1-Emergency with attending physician Dr. Ahmad Ardekani.

57.     **May 9, 2013  5:00 p.m.** Interdisciplinary Patient "Can patient follow directions? No, confused." "Is patient/family motivated to learn?  No, not at this time." "Do you or your family need information on the following:  current illness, medications, home care?" "How do you learn best?  Demonstration." Educational recorded by LeaAnn Waldzogel, R.N.

58.     **May 9, 2013  5:53 p.m.** Completed Psyche Nursing Admission Package.

59.     **May 9, 2013  6:15 p.m.** Richard signs Conditions of Admission and Consent to Medical Treatment - "1. . . . I have the right . . . to withdraw my consent for treatment or tests."

60.     **May 9, 2013  no time** Richard signs Consent for Voluntary Admission.  Witness Staff Teri Ragsdale, R.N. **May 9, 2013.** "voluntary agree and consent to the performance of all psychiatric treatment, the administration of any medications and diagnostic procedures, which in the professional judgment of my physician may be considered necessary, advisable or otherwise appropriate for my treatment. I agree to remain in the program voluntarily until my physician discharges me, **or until I make a written request for my release to my physician or program staff.** I understand that a request for my release, made by a person or persons other than myself, must be acceptable and agreed to by me. I understand that the nursing staff must obtain an order of discharge from the physician before I will be permitted to leave unit. **I further understand**

12

that, if I provide a written request for discharge, the physician may either: (1) Place an order for my discharge requested; (2) Place an order for my discharge against medical advice (AMA); or (3) Begin involuntary commitment proceedings in according with Missouri mental health laws." (Emphasis added.)

61.    No time:  Richard signs PATIENT RIGHTS, Witness Staff Teri Ragsdale, R.N. **May 9, 2013**  Each person voluntarily admitted or involuntarily detained for evaluation or treatment shall have the following rights: "To wear his own clothes; to keep and use his own personal possessions including toilet articles.  To see visitors each day. **To have ready access to letter-writing materials, including stamps, and to mail and receive unopened correspondence.**  To see and receive services of a patient advocate who has no direct or indirect clinical or administrative responsibility for the person. **To refuse medications."**  Voluntary patients have to request discharge from psychiatrist."  "Other rights as specified by regulation." "Telephone Consent: I place no limitations or restrictions on who may telephone me." "Visitation Consent: (Place check next to choice) I place no limitations or restrictions on who may visit me." (Emphasis added.)

62. **May 9, 2013  6:30 p.m.**  Last entries in file.  Patient Care Activities achieved.  "Will gain knowledge about preventing UTI.  Will achieve optimal relief of control of pain.  The patient will relate controlled falls or no falls (3).  Nursing staff will meet established standards of daily care."

63.    **May 9, 2013  7:03 p.m.**  Family Practice Consultation performed at the request of Dr. Ardekani "to assess for any potential medical etiology [cause or abnormal conditions] contributing to the patient's psychiatric admission."  Medications include Fish Oil 1 p.o. daily. Review of Systems: "positive for fatigue".  Neurologic: "positive for lightheadedness, falls and

13

loss of memory". Hematologic: "positive for anemia". Musculoskeletal" "the patient ambulates with a walker". Neurologic: "Is alert and oriented x2, oriented to name and partial date, knows that it is May of 2013. Is pleasant, cooperative. Cranial nerves 2-12 appear to be intact". Assessment and Plant: 1. Mental status changes. Psychiatry to manage and treat. 2. Hypomagnesia. Treat with magnesium oxide 400 mg. p.o. daily and repeat labs. 3. Hypokalemia. Treat with Klor-Con 10 mEq p.o. bid and repeat labs. 4. Hyperlipidemia. Continue current medications." Prognosis: "Guarded." Victoria Damba, D.O.

64.    **May 9, 2013  8:00 p.m.** Behavior Health Group Progress Note: "Problem – depressed mood". Melisa Herrington, PCP. Clinical documentation report page 176.

65.    **May 9, 2013  10:50 p.m.** Master Interdisciplinary Treatment Plan including Interdisciplinary Treatment Plan signed by LeeAnn Waldvogel, R.N. later signed by Nicole Rotter, MSW, social worker, on **May 10, 2013** at 10:00 a.m. **Patient refused to sign.** "Reason: Poor comprehension". Later signed by Dr. Ardekani on **May 15, 2013**. The only problems identified were "hallucination" and "fall risk" based upon a Nurse Assessment of LeeAnn Waldvogel, R.N. The only liabilities were "physical limitations" and "impaired memory". The prioritized problem list was "hallucinations problems number 1", "fall risk problem number 2", "Axis I Dementia", "Axis II zero", "Axis III alcoholic organic brain syndrome", "Axis IV severe", Axis V 30". The patient's goals were "go home". Discharge criteria "tolerates medications w/o side effects, free of agitation, normal sleep pattern." Discharge "to be determined". **Initial release date scheduled was May 16, 2013.** (Emphasis added.)

66.    **Initial psychiatric assessment was done by a nurse and not a doctor.  No sign of hallucinations on any previous hospital record.  No Alcoholic Organic Brain Syndrome on any hospital record.  Only reference to hallucinations occurs with reference to**

14

conversations with family, in particular sister-in-law and Judge McCarver's cousin Darlene Wann, in reports by nurses referencing Nurse Karen's report or Dr. Forsythe's report recommending a swing bed evaluation.  No interview with patient states that patient directly stated to a doctor or nurse that patient had "hallucinations".

67.     **Dr. Damba's report did not find a physical or medical cause for Alcoholic Organic Brain Syndrome.**

68.     **Patient was not admitted for alcohol abuse.**

69.     · **The only remaining cause for admission supported by a hospital record is fall reported in administration records May 8, 2013  10:05 p.m. in nurse's notes by Linda Brewer, R.N.**

70.     **The fall conforms to the earlier Dr. Forsythe recommendation for a swing bed evaluation which is a hospital bed until services at home can be acquired if needed or a skilled nursing facility.**

71.     **May 10, 2013** The Q-15 Observation Check Sheet indicated **no hallucinations** and no falls reported for a 24-hour period **May 10, 2013.**

72.     **May 10, 2013  4:19 a.m.** Interdisciplinary Treatment Notes:  Richard expressed feelings of wanting to go back downstairs stating "this isn't what I thought it was going to be" electronically signed by Sheila Bridges, R.N.

73.     **May 10, 2013  3:00 p.m.** Admit Note: The patient admitted to the behavioral health unit with increased confusion and hallucinations.  After an assessment was completed, it was determined the patient has major decline in life skills.  He has been residing on his own and due to his lack of cognitive abilities it is not an option for him to continue to reside alone.  The patient will be provided medication management and milieu therapies.  He is his own guardian.

Meetings with the family will take place to determine the best course of action." Entered by Nicole Rotter.

74.     **May 10, 2013  3:55 p.m.**  Interdisciplinary Treatment Notes:  Richard is alert and oriented to self, person and place, able to voice needs, no complaint of discomfort; insight is fair, gait safe and steady; good eye contact.  Needs encouragement to finish his ADL skills, encourage to attend groups, encourage coping skills.

75.     Admission Progress Notes, History and Physical - Dr. Ardekani:  "Chief complaint: weak, confused, mental status changes."  "History of Present Illness" – Description does not conform to hospital records history claim that "it was found later on he is a chronic alcoholic."  Hospital records do not show this.  History states "he was sent to the psychiatric floor for treatment of his psychiatric problem because of progressive confusion, forgetfulness is one of the main reasons the patient ended up here."  "Also, the patient is a chronic alcoholic." "The truth is, the patient entered the unit voluntarily."

76.     MENTAL STATUS:  The patient is oriented.  The description of disorientation is confusion and the language does not make any sense.  Information about disorientation came from the sister-in-law and is not supported by any facts or any hospital reports.

77.     DIAGNOSTIC IMPRESSION:  Axis I – Early state dementia probably due to alcohol; Alzheimer's with behavior change; questionable early state of depression and chronic alcoholism by the family not supported by hospital records or Dr. Forsyth's records.

78.     Admission progress note indicates Dr. Ardekani made numerous errors and was unable to support the conclusions regarding mental status with any specific examples.

**D.      Post Geriatric Ward Admission Hospital Reports from May 11, 2013
         to May 14, 2013 Show No Reason to Confine Richard Lee Wann**

80.    During **May 11, 2013 through May 14, 2013** the hospital records did not show anything physically or mentally abnormal with Richard according to tests and he was scheduled for release **May 15, 2013**.

81.    Interdisciplinary Treatment Plan dated **May 9, 2013** indicated that if there are no hallucinations or falls in four days then Richard would be released.

82.    Such conditions were fulfilled as shown by the Assessment/Patient Care Activities and the Q15 for **May 10, 2013 through May 13, 2013.**

**E.    On the day before and on the scheduled day of his release, Richard was given Risperidone without his Required Consent**

83.    Richard was scheduled for release on **May 16, 2013** as shown on the Interdisciplinary Treatment Plan. The hospital billing record to Medicare shows that the hospital billed Medicare for Olanzapine (Zydis) 5 mg on **May 15, 2013.** The hospital Medical Administration Record shows 5 mg of Zyprexa (Zydis) tablet administered on **May 15, 2013 at 8:44 p.m.** by Sheila Bridges. The Q-15 shows that Richard was in the dayroom at such time watching TV as reported by Lisa Herrington. Sheila Bridges did not sign in on the Q-15 for **May 15, 2013**. The Assessment/Patient Care Activities for **May 15, 2013** does not show that Richard was given the drug. The Flow Chart for **May 15, 2013** does not show that Richard was given the drug. The doctor's prescription for this drug shows that it was only to be given "for psychiatric agitation if patient consents" (See. Dr. Ardekani's admission note dated **May 9, 2013 at 4:00 p.m.).** No report shows that Richard had "psychiatric agitation" or any agitation on **May 15, 2015.** No report shows that Richard consented to taking the drug.

84.    The hospital billing record to Medicare shows that the hospital billed Medicare for two doses of Olanzapine (Zydis) 5 mg on **May 16, 2013.** The hospital Medication Administration Record shows one Zyprexa (Zydis) 5 mg tablet administered on **May 16, 2013 at**

**1:26 p.m.** administered by Teri Ragsdale. The Q-15 shows that Richard was in the dayroom at such time hallucinating as reported by Sandra Ketcherside. The hospital Medication Administration Record shows the second Zyprexa (Zydis) 5 mg tablet was administered on **May 16, 2013 at 8:40 p.m.** administered by Sheila Bridges. The Q-15 shows that Richard was in the dayroom at such time watching TV as reported by Lisa Herrington. The Assessment/Patient Care Activities for **May 16, 2013** does not show that Richard consented to being given the drug at lunch time and does not show Richard being given the drug later in the evening. The Flow Chart for **May 16, 2013** does not show that Richard was given the drug.

      **F.**     **May 16, 2013 – Dr. Ardekani and the social worker, Nikki Rotter extend Richard's release date to May 24, 2013, and Nikki Rotter reports Richard to the County Public Administrator to commence Guardianship and/or Conservatorship proceedings**

      85.    On **May 16, 2013** Dr. Ardekani and Nikki Rotter, MSW, extended Richard's release date from **May 16, 2013 to May 24, 2013** after the drugs were given to Richard without his consent. The Interdisciplinary Review Report dated **May 16, 2013** states "The patient continues to exhibit hallucinations" and "The patient is not verbalizing an understanding of differences between reality and non-reality".

      86.    On **May 16, 2013** Nikki Rotter sent information on Richard to the St. Francois County Public Administrator regarding the need for a guardianship and/or conservatorship petition.

      **G.**    **May 17, 2013  -  Dr. Ardekani prescribes new drugs; St. Francois County Public Administrator files Petition for Guardianship and Conservatorship proceedings.**

      87.    On **May 17, 2013** Dr. Ardekani prescribed the Risperidone .25 mg which was not on the original prescription list of **May 9, 2013.**

88.     The Medicare billing shows on **May 17, 2013** Risperidone .25 mg tabs 2 $17.20. The Medication Administration Record shows Risperidone 0.5 mg 9:00 p.m. and 8:53 p.m. by mouth administered by Richard Littge, R.N.  The Q-15 does not show that he was given the drug and does not show that Richard Littge was present on **May 17, 2013**.  The Assessment/Patient Care Activities for **May 17, 2013** does not show that Richard received the drug but does show that Richard Littge was present on **May 17, 2013.**  The Flow Chart does not show that Richard received the drug.

89.     V. Kenneth Rohrer, St. Francois County Public Administrator, filed a Petition in the Circuit Court of St. Francois County, Missouri, Probate Division to be appointed guardian of the person of Richard and limited conservator of the estate of Richard alleging in Paragraph 1 in relevant part that Richard:

> ". . . is unable by reason of: alleged alcohol abuse, dementia, anemia, mental status changes, hypomagnesia and hypokalemia, diverticulosis, fatty liver disease, chronic back pain and spondylosis to receive and evaluate information or to communicate decisions to such an extent that Respondent lacks capacity (in part) to meet essential requirements for food, clothing, shelter, safety or other care such that serious injury illness or disease is likely to occur.  Respondent is also unable as a result of the above-described conditions to receive and evaluate or to communicate decisions to such an extent that Respondent lacks ability to manage (in part) his financial resources.  That Respondent, by reason of the conditions described above, is unable to meet Respondent's essential daily needs of living and/or manage his financial resources without supervision and that there are no less intrusive alternatives to provide for Respondent's care and financial needs."

90.     The Petition stated as its reason at Paragraph 11:

> "The appointment of a guardian and conservator is sought for the following reason: Based upon medical referral to protect Respondent's immediate welfare."

91.     The Petition listed in Paragraph 12 as witnesses who may be called to testify in support of the Petition amongst others: Ahmad Ardekani, M.D. and Nikki Rotter. The docket for the Guardianship/Conservatorship shows Dr. Ardekani's "deposition" in support of the Petition being filed **May 17, 2013.**

92.     Rohrer, Ardekani and Nikki Rotter were aware that the Petition would fail if

Richard was released from the hospital on **May 24, 2013** and living on his own.  Risperidone

was given to Richard each day on **May 18, 2013 through May 23, 2013.**

> **H.     May 18, 2013 through May 23, 2013 – Risperidone continues to be
> given; the hospital responds to Richard's daughter entering the
> Guardianship/Conservatorship case on May 21, 2013 by giving the
> added drugs Olanzapine, Chloradiazepoxide and Zyprexa to Richard
> on May 22, 2013, and extending Richard's scheduled release date to
> May 30, 2013.**

93.     On **May 20, 2013**, the clerk of the Court filed a Notice of Hearing to Respondent

setting a hearing on the Petition for **June 7, 2013,** 13 days after Richard's revised scheduled

**May 24, 2013** release from the hospital.

94.     On **May 21, 2013,** Theresa Brown (Richard's daughter) filed her appearance in

the Guardianship/Conservatorship case.

95.     On **May 22, 2013**, Olanzapine (Zyprexa, Zydis) 5 mg and Zyprexa 10 (IM) were

added to the drugs given to Richard.

96.     The Medicare billing shows on **May 22, 2013** Risperidone .5 mg tab 2

Olanzapine (Zydis) 5 mg; and Zyprexa IM 10 mg.  The Medication Administration Record

shows Risperidone 0.5 mg. was given to Richard at 8:45 by mouth by unknown staff (not

recorded anywhere in medical records); Olanzapine (Zydis) 5 mg not time and not in the

medication administration record; and Zyprexa IM 10 mg no time and not in the medication

administration record.  The Q-15 does not show that he was given any drug and does not show

that unknown staff member was present on **May 22, 2013.**  The Assessment/Patient Care

Activities for **May 22, 2013** does show that Richard received Zyprexa IM 5 mg from Sheila

Bridges and no other drugs.  No showing of Richard's consent for Zyprexa as required on the

Master Interdisciplinary Treatment Plan. The Flow Chart does not show that Richard received any drug.

97.     On **May 23, 2013** Dr. Ardekani and Nikki Rotter execute the Interdisciplinary Treatment Plan Review stating "the patient continues to exhibit hallucinations" showing no other problems. The schedule release date was changed to **May 30, 2013**.

98.  On **May 23, 2013** Richard Wann, Richard's son, files consent to Theresa Brown being Richard's guardian and conservator.

I.      **May 24, 2013 through June 14, 2013 – Risperidone continues to be given every day; Trazodone given every day; May 24, 2013 through June 14, 2013 Richard received Lorazepam (new drug – no consent); June 5, 6, 13 and 14, 2013 Richard received Olanzapine (Zydis) (no consent).**

99.     Risperidone was given to Richard each day **May 24, 2013 through June 14, 2013**.

100.    Trazadone was given to Richard each day **May 24, 2013 through June 14, 2013**.

101.    On **6/2/2013** Richard received Lorazepam, a new drug, given without consent.

102.    On **June 5, 6, 12 & 14, 2013** Richard received Olanzapine (Zydis) given without consent.

103.    The Medicare billing shows Risperidone .5 mg tabs 2 each day May **24 ,2013 through May 28, 2013, 1 mg May 29, 2013** and .5 mg, **May 30, 2013 through June 13, 2013 2 tabs 1 mg,** and **June 14, 2013 1 mg;** Trazadone 100 mg **May 24, 2013 through June 13, 2013**; Lorazepam 1 mg **June 2, 2013;** and Olanzapine (Zydis) **June 5, 2013, June 6, 2013, June 12, 2013 and June 14, 2013.** The Medication Administration Record shows Risperidone given every day from **May 24, 2013 through June 14, 2013 except May 29, 2013;** Trazadone given every day from **May 24, 2013 through June 13, 2013;** Olanzapine (Zydis) 5 mg on **June 5, 2013, June 6, 2013 and June 14, 2013 missing June 12, 2013.** The Assessment/Patient Care

Activities for **May 22, 2013** does show that Richard only received Olanzapine (Zydis, Zyprexa) on **June 13, 2013** which was not a day shown that it was given on any other record. No showing of Richard's consent for Zyprexa was required on the Master Interdisciplinary Treatment Plan notes. The Flow Chart does not show that Richard received any drug.

     **J.**     **Dr. Ardekani and Nikki Rotter respond to Theresa Brown filing to be Richard's guardian and conservator by extending the release date to June 6, 2013 and then holding Richard after June 6, 2013 until June 14, 2013 without a new Interdisciplinary Treatment Plan Review.**

     104.     On **May 28, 2013** Theresa Brown filed a Petition for Appointment of Guardian of the Person and Conservator of the Estate of Richard Lee Wann.

     105.     On **May 30, 2014** Dr. Ardekani and Nikki Rotter execute an Interdisciplinary Treatment Plan Review stating "the patient continues to exhibit hallucinations" and showing no other problems. The scheduled release date was changed to **June 6, 2013.**

     106.     On **June 3, 2013** the Court changed the hearing date for the Petition from **June 7, 2013 to June 10, 2013**.

     107.     On **June 6, 2013** Dr. Ardekani and Nikki Rotter kept Richard in the hospital without a new Interdisciplinary Treatment Plan Review.

     **K.**     **Consent Judgment appoints Rohrer temporary emergency guardian ad litem and temporary emergency conservator ad litem for only thirty days; Consent Judgment requires new appointment after thirty days or hearing showing emergency to extend appointments.**

     108.     On **June 10, 2013** a hearing was held before Shawn R. McCarver, judge in the Probate Division of St. Francois County, Missouri pursuant to petitions of V. Kenneth Rohrer and Theresa Brown under RSMo §475.075.11. The Court did not appoint a guardian or conservator. The parties entered into a Stipulation and Agreement. On **June 13, 2013** a Consent Judgment appointing guardian and conservator ad litem under RSMo §475.075.11 (Consent

Judgment) was signed and entered **June 12, 2013** (according to the docket) appointing V. Kenneth Rohrer as emergency guardian ad litem over the person of Richard and emergency conservator ad litem over the estate of Richard for a period not to exceed thirty (30) days from the date of this Consent Judgment.  (Paragraph 1 of the Consent Judgment modified by Paragraph 16 making the appointment an "emergency appointment").

109.    The Consent Judgment did not provide for the appointment to be extended beyond the thirty (30) day period from the date of the Consent Judgment.  Paragraph 16 of the Consent Judgment only allowed for the extension of an emergency appointment as follows:

> "If the need for the emergency appointment of the guardian ad litem and conservator ad litem continues such that it appears the appointment is necessary for longer than thirty (30) days, the provisions of §475.075.1 RSMo shall govern."

RSMo §475.075.11 states in relevant part:

> "11.  If an alleged incapacitated person or disabled person has no guardian or conservator and an emergency exists which presents a substantial risk that serious physical harm will occur to his person or irreparable damage will occur to his property because of his failure or inability to provide for his essential human needs or to protect his property, the court may, with notice to such person's attorney, as provided in subsection 3 of this section, and service of notice upon such person as provided in subsection 2 of this section, and, with or without notice to other persons interested in proceeding, after hearing, appoint a guardian or conservator ad litem for a specified period not to exceed thirty days and for specified purposes.  Orders appointing the guardian or conservator ad litem may be modified upon motion and hearing.  **After hearing and a showing of continuing emergency need, orders appointing the guardian or conservator ad litem may be extended from time to time, not to exceed thirty days each.**  A guardian or conservator ad litem may be removed at any time and shall make any report the court requires. Proceedings under this subsection shall be not employed as alternative to proceedings for the involuntary detention and treatment of a mentally ill person under the provisions of chapter 632."  (Emphasis added.)

**L.      Richard released from hospital and moved to Arbors without consent of Theresa Brown despite availability at Barnes Jewish Hospital for evaluation.**

110.    On **June 4, 2013** Richard was released from MARMC and moved to The Arbors at Maple Valley Drive, 520 Maple Valley Drive, Farmington, Missouri  63640.  Such move was

not authorized under the Consent Judgment.  Paragraph 13 of the Consent Judgment only authorized Theresa Brown to move Richard to "The Arbors at Maple Valley Drive, 520 Maple valley Drive, Farmington, Missouri  63640 or an equivalent facility."  Paragraph 12 of the Consent Agreement states in relevant part:

> "Due to possible delays and assuming the Ward/Protectee is removed from the geriatric department of the present hospital, **the Petitioner is authorized** to place the Ward/Protectee at the Arbors at Maple Valley Drive, 520 Maple Valley Drive, Farmington, Missouri  63640, or an equivalent facility."  (Emphasis added.)

111.    Paragraph 13 of the Consent Judgment required Theresa Brown to arrange for Richard's transfer to Barnes Jewish Hospital for evaluation, treatment, testing, etc.  Paragraph 11 of the Consent Judgment required Rohrer to accede to the family's choice of physicians at Barnes Jewish Hospital "upon notification, if the GAL has no concerns".  On **June 10, 2013** Rohrer was notified by Theresa Brown's counsel, Eric C. Harris, of the choice of Dr. Noura Sharbash at Barnes Jewish Hospital and requested to make immediate transportation to Barnes Jewish Hospital. Rohrer orally replied to Eric C. Harris that he did not like women doctors and did not give any other reasons and refused to allow Richard to go to Barnes Jewish Hospital.

### M.    The Arbors knew that it was housing Richard without permission and giving Richard drugs without his consent.

112.    The Arbors knew that it was accepting Richard without the approval of Theresa Brown as it had a copy of the Consent Judgment.

113.    Rohrer never signed a consent form for drugs to be given to Richard at the Arbors.  Richard never signed a consent form for drugs to be given to him at the Arbors.  Rohrer sent a letter to the Arbors dated **November 14, 2013** agreeing with the system of ADL's [Activity for Daily Living] and medication suggested by Mr. Sechrest who was Richard's court appointed attorney, but not a doctor.

114.    The Arbors gave Richard the following drugs for which Richard had not previously consented, without permission and billed Medicare:

(1)    Furosemide 20 mg;

(2)    Risperidone 2 mg tabs x30;

(3)    Namenda XR Titratai x28.

**N.    Rohrer was never authorized to continue as Guardian and Conservator after July 12, 2013.**

115.    Pursuant to the specific language of Paragraph 1 of the Consent Judgment Rohrer was appointed for only thirty (30) days after the date of the Consent Judgment (July 12, 2013). Under Paragraph 16 of the Consent Judgment, Rohrer's emergency appointment could only be extended "after hearing and a showing of continuing emergency need".

116.    Rohrer made ten Motions for Extension of Temporary Guardianship-Conservatorship. None of the motions stated "a continuing emergency need" as required in RSMO §475.075.11. No hearing occurred on any motion as required in RSMo §475.075.11. The motions and reasons stated were:

(1) **June 25, 2013** - "said order extensions would be in the best interest of the Respondent as V. Kenneth Rohrer will be unavailable on 7/10/13 due to the previously scheduled personal matters of movant."

**June 26, 2013** - Motion granted; non hearing.

(2) **July 18, 2013** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

**July 22, 2013** - Motion granted; non hearing.

(3) **September 5, 2013** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

25

**September 5, 2013** - Motion granted, non hearing.

(4) **September 27, 2013** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

**September 27, 2013** - Motion granted; non hearing.

(5) **October 28, 2013** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

**October 31, 2013** - Motion granted; non hearing.

(6) **November 22, 2013** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

**November 26, 2013** - Motion granted; non hearing.

(7) **December 13, 2013** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

**December 16, 2013** - Motion granted; non hearing.

(8) **January 16, 2014** - "said order of extensions would be in the best interest of Respondent because medical consultations are pending."

(9) **January 16, 2014** - Writ of Prohibition filed in Court of Appeals.

(10) **January 24, 2014** - "said order of extensions would be in the best interest of Respondent because medical consultations and issues are pending and because Respondent is an alcoholic and is recovering from a severe alcohol induced dementia and placement in a facility is necessary to prevent Respondent from having access to alcohol."

(11) **January 30, 2014** - Motion granted pursuant to stipulation agreement, the Court hereby extends the temporary conservator ad litem and the temporary guardian ad litem orders for a period of third days from January 30, 2014, pursuant RSMo §475.075.11. **The**

**parties shall perform the terms of the said stipulation agreement which is attached hereto and incorporated herein by reference.**

The stipulation agreement allowed Richard Wann to move to his residence and the temporary guardianship/conservatorship of Rohrer was limited to no more than four requests for extension without a formal hearing after the extension granted on **January 30, 2014** and Richard's attorney shall withdraw his Writ in the appellate court (**January 31, 2014**).

117.   **Rohrer filed four motions for extensions pursuant to the January 30, 2014 Stipulation and Consent Judgment.**

(1) **February 19, 2014** - Motion for Extension - "the parties shall perform the terms of the said stipulation agreement and consent judgment dated January 30, 2014, and Respondent is still to be evaluated by the physician appointed by the Court."

**February 19, 2014** - Motion granted extending guardianship and conservatorship and Judgment and Order Extending Consent Judgment of January 39, 2014 entered.

**February 24, 2014** - Rohrer files an Amended Petition for Appointment of Guardian and Conservator. Amended Petition dismissed without prejudice on **July 10, 2014**.

(2) **March 24, 2014** - Motion for Extension of the Temporary Guardianship-Conservatorship GAL - "the parties shall perform the terms of the said stipulation agreement and consent judgment dated January 30, 2014, and Respondent is still to be evaluated by the physician appointed by the Court."

**March 25, 2014** - Motion granted without hearing.

(3) **April 15, 2014** - Motion for Extension of the Temporary Guardianship-Conservatorship GAL - "the parties shall perform the terms of the said stipulation agreement and

consent judgment dated January 30, 2014, and Respondent is still to be evaluated by the physician appointed by the Court."

      **April 16, 2014** - Motion granted without hearing.

      (4) **May 13, 2014** - Motion for Extension of the Temporary Guardianship-Conservatorship GAL - "the parties shall perform the terms of the said stipulation agreement and consent judgment dated January 30, 2014, and Respondent is still to be evaluated by the physician appointed by the Court."

      **May 13, 2014** - Motion granted without hearing.

    118.    On **May 30, 2014** Rohrer moved for a fifth Extension of Temporary Guardianship-Conservatorship GAL or In the Alternative, Motion for Continuance alleging that he had not yet received a physician's report on the Respondent and needed such to decide whether he would move forward with his Petition.

    119.    On **June 27, 2014** the Court extended the conservator ad litem from **June 28, 2014 to July 28, 2014** and dissolved the Temporary Guardian Ad Litem as of **June 27, 2014.**

    **O.**    **Final Settlement and Order and Judgment did not release any named or potential defendant in this complaint.**

    120.    On **June 27, 2014** Shawn McCarver, Judge in the Circuit Court of St. Francois County, Missouri, Probate Division, signed the Order and Judgment approving the Final Settlement and Judgment of Distribution filed **June 10, 2014** as amended *nunc pro tunc* by filing of **June 12, 2014**. No release was given from Richard to any named or potential defendant in this complaint.

## FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS AGAINST ALL DEFENDANTS PUSURANT TO 42 U.S.C. §1983

    121.    Richard re-alleges Paragraph 1 – 120 and each of them as if set forth in full.

122.    Defendants and each of them is a county (St. Francois County), individuals employed by the County (Rohrer, Rohrer's attorney Pultz), individuals and entities working in concert with the County and its employees (Dr. Ardekani, Rotter, Mineral Area Regional Medical Center, Americare, McCarver, who did not have jurisdiction to initially decide the Petition for Guardianship/Conservatorship for Richard or appoint counsel for Richard or to extend Rohrer's emergency temporary guardianship of Richard and conservatorship of Richard's estate after the Consent Judgment under RSMo §475.075.11 without either a hearing or a new petition, and Sechrest who worked against the interests of Richard).

123.    Defendant and each of them acted in concert "under color of state law" in which they engaged in a scheme to deprive Richard of life [his freedom] and property [money] and defraud Medicare amongst other things by:

(1)    falsely claiming Richard was unstable and on that basis admitting him to the MARMC geriatric ward;

(2)    once admitted, depriving Richard of pencil and paper and means to contact a doctor to obtain his voluntary release thereby imprisoning Richard against his will;

(3)    refusing to release Richard on scheduled release dates even though Richard fulfilled the criteria for release;

(4)    giving Richard psychotropic drugs affecting his mind to which he did not consent for the purpose of falsely imprisoning Richard, obtaining money from Medicare and aiding and abetting St. Francois County and Rohrer in obtaining a temporary guardianship/conservatorship over Richard and his estate and thereby prolonging Richard's false imprisonment in the MARMC geriatric ward resulting in more

Medicare payments;

(5)     making false representations in reports, documents and court documents on behalf of Rohrer as St. Francois County Administrator to file a petition for, and procure, a temporary guardianship/conservatorship over Richard and his estate;

(6)     committing "fraud upon the court' by the judge McCarver not having jurisdiction over the petition, appointing counsel for Richard and any extension of the temporary guardianship/conservatorship over Richard and his estate;

(7)     keeping Richard falsely incarcerated at MARMC geriatric ward through actions of Rohrer appointed by McCarver who did not have jurisdiction resulting in a void Consent Judgment appointing Rohrer to the temporary guardianship/conservatorship over Richard and his estate or extending such;

(8)     keeping Richard falsely incarcerated at The Arbors through actions of Rohrer and The Arbors where charging Richard's estate for such false incarceration and administering to Richard psychotropic drugs without his consent;

(9)     causing Richard emotional distress and physical stress; and

(10)    charging Richard's estate for the costs and fees of the temporary guardianship/conservatorship over Richard and his estate, amongst other things.

124.    The aforementioned actions directly caused Richard to be falsely imprisoned in the MARMC geriatric ward and The Arbors and Maplebrook [loss of life], be drugged without his consent with psychotropic drugs at the MARMC geriatric ward and The Arbors [loss of life], suffer loss of money [loss of property], suffer emotional distress and suffer physical stress [loss of life] amongst other things. These losses were due to the St. Francois County police seeing

guardianships over the persons and conservatorships over the property of the estates of persons in hospitals.

125.    Richard suffered damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for actual damages, exemplary damages, punitive damages, emotional stress, attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

## SECOND CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS AGAINST ALL DEFENDANTS PUSURANT TO 42 U.S.C. §1985 (2)

126.    Richard re-alleges Paragraphs 1 – 120 and Paragraphs 122 – 125 and each of them as if set forth in full.

127.    42 U.S.C. §1985 (2) states in relevant part:

" . . . or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . ."

128.    Defendants and each of them conspired and acted in concert for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in the State of Missouri with the intent to deny Richard to the equal protection of the laws.

129.    In furtherance of such conspiracy and concert of action, defendants committed the following over acts amongst others to deprive Richard of life [his freedom], property [money] and equal protection of the laws:

(1)    falsely claiming Richard was unstable and on that basis admitting him to the MARMC geriatric ward;

(2)    once admitted, depriving Richard of pencil and paper and means to contact a doctor to obtain his voluntary release thereby imprisoning Richard against his will;

31

(3)     refusing to release Richard on scheduled release dates even though Richard
        fulfilled the criteria for release;

(4)     giving Richard psychotropic drugs affecting his mind to which he did not consent
        for the purpose of falsely imprisoning Richard, obtaining money from Medicare
        and aiding and abetting St. Francois County and Rohrer in obtaining a temporary
        guardianship/conservatorship over Richard and his estate and thereby prolong
        Richard's false imprisonment in MARMC geriatric ward resulting in more
        Medicare payments;

(5)     making false representations in reports, documents and court documents on behalf
        of Rohrer as St. Francois County Administrator to file a petition for, and procure,
        a temporary guardianship/conservatorship over Richard and his estate;

(6)     committing "fraud upon the court" by the judge McCarver not having jurisdiction
        over the petition, appointing counsel for Richard and any extensions of the
        temporary guardianship/conservatorship over Richard and his estate;

(7)     keeping Richard falsely incarcerated at MARMC geriatric ward through actions
        of Rohrer appointed by McCarver who did not have jurisdiction resulting in a
        void Consent Judgment appointing Rohrer to the temporary
        guardianship/conservatorship over Richard and his estate or extending such;

(8)     keeping Richard falsely incarcerated at The Arbors through actions of Rohrer and
        The Arbors where Richard's estate was charged for such false incarceration and
        Richard was also given psychotropic drugs without his consent;

(9)     causing Richard emotional distress and physical stress, and

(10)    charging Richard's estate for the costs and fees of the temporary

guardianship/conservatorship over Richard and his estate, amongst other things.

130.    The aforementioned actions directly caused Richard to be falsely imprisoned in the MARMC geriatric ward and The Arbors [loss of life], be drugged without his consent with psychotropic drugs at the MARMC geriatric ward and The Arbors [loss of life], suffer loss of money [loss of property], suffer emotional distress and suffer physical stress [loss of life], amongst other things.

131.    Richard suffered damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for actual damages, exemplary damages, punitive damages, emotional stress, attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

### THIRD CAUSE OF ACTION FOR UNLAWFUL IMPRISONMENT AGAINST ALL DEFENDANTS COMMON LAW DIVERSITY OF CITIZENSHIP

132.  Richard re-alleges Paragraphs 1 – 120, Paragraphs 122 – 125 and Paragraphs 127 – 131 and each of them as if set forth in full.

133.    Defendants and each of them acted in concert in which they engaged in a scheme to deprive Richard of life [his freedom] by unlawfully imprisoning him and did unlawfully imprison him amongst other things by:

(1)     falsely claiming Richard was unstable and on that basis admitting him to the MARMC geriatric ward;

(2)     once admitted, depriving Richard of pencil and paper and means to contact a doctor to obtain his voluntary release thereby imprisoning Richard against his will;

(3)     refusing to release Richard on scheduled release dates even though Richard

fulfilled the criteria for release;

(4)     giving Richard psychotropic drugs affecting his mind to which he did not consent for the purpose of falsely imprisoning Richard, obtaining money from Medicare and aiding and abetting St. Francois County and Rohrer in obtaining a temporary guardianship/conservatorship over Richard and his estate and thereby prolong Richard's false imprisonment in MARMC geriatric ward resulting in more Medicare payments;

(5)     making false representations in reports, documents and court documents on behalf of Rohrer as St. Francois County Administrator to file a petition for, and procure, a temporary guardianship/conservatorship over Richard and his estate;

(6)     committing "fraud upon the court" by the judge McCarver not having jurisdiction over the petition, appointing counsel for Richard and any extensions of the temporary guardianship/conservatorship over Richard and his estate;

(7)     keeping Richard falsely incarcerated at MARMC geriatric ward through actions of Rohrer appointed by McCarver who did not have jurisdiction resulting in a void Consent Judgment appointing Rohrer to the temporary guardianship/conservatorship over Richard and his estate or extending such;

(8)     keeping Richard falsely incarcerated at The Arbors through actions of Rohrer and The Arbors where Richard's estate was charged for such false incarceration and Richard was also given psychotropic drugs without his consent; and

(9)     causing Richard emotional distress and physical stress.

134.    The aforementioned actions directly caused Richard to be falsely imprisoned in the MARMC geriatric ward and The Arbors [loss of life], be drugged without his consent with

psychotropic drugs at the MARMC geriatric ward and The Arbors [loss of life], suffer loss of money [loss of property], suffer emotional distress and suffer physical stress [loss of life], amongst other things.

135.    Richard suffered damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for actual damages, exemplary damages, punitive damages, emotional stress, attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

### FOURTH CAUSE OF ACTION FOR UNLAWFUL IMPRISONMENT BY CHEMICAL RESTRAINT AND BATTERY AGAINST ALL DEFENDANTS COMMON LAW DIVERSITY OF CITIZENSHIP.

136.    Richard re-alleges Paragraphs 1 – 120, Paragraphs 122 – 125, Paragraphs 127 – 131 and Paragraphs 133 – 135, and each of them as if set forth in full.

137.    Defendants and each of them acted in concert in which they engaged in a scheme to deprive Richard of life [his freedom] by unlawfully imprisoning him by chemical restraint and battery by giving him psychotropic drugs without his consent and did unlawfully imprison him and commit battery amongst other things by:

(1)    falsely claiming Richard was unstable and on that basis admitting him to the MARMC geriatric ward;

(2)    once admitted, depriving Richard of pencil and paper and means to contact a doctor to obtain his voluntary release thereby imprisoning Richard against his will;

(3)    refusing to release Richard on scheduled release dates even though Richard fulfilled the criteria for release;

(4)    giving Richard psychotropic drugs affecting his mind to which he did not consent

for the purpose of falsely imprisoning Richard, obtaining money from Medicare and aiding and abetting St. Francois County and Rohrer in obtaining a temporary guardianship/conservatorship over Richard and his estate and thereby prolong Richard's false imprisonment in MARMC geriatric ward resulting in more Medicare payments;

(5)     keeping Richard falsely incarcerated at MARMC geriatric ward through actions of Rohrer appointed by McCarver who did not have jurisdiction resulting in a void Consent Judgment appointing Rohrer to the temporary guardianship/conservatorship over Richard and his estate or extending such;

(6)     keeping Richard falsely incarcerated at The Arbor through actions of Rohrer and The Arbors where Richard's estate was charged for such false incarceration and administering to Richard psychotropic drugs without his consent; and

(7)     causing Richard emotional and physical stress, amongst other things.

138.    The aforementioned actions directly caused Richard to be falsely imprisoned in the MARMC geriatric ward and The Arbors [loss of life], be drugged without his consent with psychotropic drugs at the MARMC geriatric ward and The Arbors [loss of life], suffer loss of money [loss of property], suffer emotional distress and suffer physical stress [loss of life], amongst other things.

139.    Richard suffered damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for actual damages, exemplary damages, punitive damages, emotional stress, attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

## FIFTH CAUSE OF ACTION FOR INTENTIAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS COMMON LAW DIVERSITY OF CITIZENSHIP

140.    Richard re-alleges Paragraphs 1 – 120, Paragraphs 122 – 125, Paragraphs 127 –

131, Paragraphs 133 – 135 and Paragraphs 137 – 139, and each of them as if set forth in full.

141.    Defendants and each of them acted in concert in which they intentionally engaged

in a scheme to deprive Richard of emotional distress and did cause Richard emotional distress by

the following acts amongst other:

(1)    falsely claiming Richard was unstable and on that basis admitting him to the

MARMC geriatric ward;

(2)    once admitted, depriving Richard of pencil and paper and means to contact a

doctor to obtain his voluntary release thereby imprisoning Richard against his

will;

(3)    refusing to release Richard on scheduled release dates even though Richard

fulfilled the criteria for release;

(4)    giving Richard psychotropic drugs affecting his mind to which he did not consent

for the purpose of falsely imprisoning Richard, obtaining money from Medicare

and aiding and abetting St. Francois County and Rohrer in obtaining a temporary

guardianship/conservatorship over Richard and his estate and thereby prolong

Richard's false imprisonment in MARMC geriatric ward resulting in more

Medicare payments;

(5)    making false representations in reports, documents and court documents on behalf

of Rohrer as St. Francois County Administrator to file a petition for, and procure,

a temporary guardianship/conservatorship over Richard and his estate;

(6)     committing "fraud upon the court" by the judge McCarver not having jurisdiction over the petition, appointing counsel for Richard and any extensions of the temporary guardianship/conservatorship over Richard and his estate;

(7)     keeping Richard falsely incarcerated at MARMC geriatric ward through actions of Rohrer appointed by McCarver who did not have jurisdiction resulting in a void Consent Judgment appointing Rohrer to the temporary guardianship/conservatorship over Richard and his estate or extending such;

(8)     keeping Richard falsely incarcerated at The Arbor through actions of Rohrer and The Arbors where Richard's estate was charged for such false incarceration and administering to Richard psychotropic drugs without his consent; and

(9)     causing Richard emotional and physical stress; and

(10)    charging Richard's estate for the costs and fees of the temporary guardianship/conservatorship over Richard and his estate, amongst other things.

142.    The aforementioned actions directly caused Richard to be falsely imprisoned in the MARMC geriatric ward and The Arbors [loss of life], be drugged without his consent with psychotropic drugs at the MARMC geriatric ward and The Arbors [loss of life], suffer loss of money [loss of property], suffer emotional distress and suffer physical stress [loss of life], amongst other things.

143.    Richard suffered damages in an amount to be determined at trial.

144.    Defendants actions were malicious and intended to oppress Richard and an award of punitive damages is requested.

38

**WHEREFORE,** the Plaintiff prays for actual damages, exemplary damages, punitive damages, emotional stress, attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

### SIXTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS COMMON LAW DIVERSITY OF CITIZENSHIP

145.    Richard re-alleges Paragraphs 1 – 120, Paragraphs 122 – 125, Paragraphs 127 – 131, Paragraphs 133 – 135, Paragraphs 137 – 139 and Paragraphs 141 - 144, and each of them as if set forth in full.

146.    Defendants and each of them acted in concert in which they negligently caused Richard emotional distress by the following acts amongst other:

(1)    falsely claiming Richard was unstable and on that basis admitting him to the MARMC geriatric ward;

(2)    once admitted, depriving Richard of pencil and paper and means to contact a doctor to obtain his voluntary release thereby imprisoning Richard against his will;

(3)    refusing to release Richard on scheduled release dates even though Richard fulfilled the criteria for release;

(4)    giving Richard psychotropic drugs affecting his mind to which he did not consent for the purpose of falsely imprisoning Richard, obtaining money from Medicare and aiding and abetting St. Francois County and Rohrer in obtaining a temporary guardianship/conservatorship over Richard and his estate and thereby prolong Richard's false imprisonment in MARMC geriatric ward resulting in more Medicare payments;

(5)     making false representations in reports, documents and court documents on behalf of Rohrer as St. Francois County Administrator to file a petition for, and procure, a temporary guardianship/conservatorship over Richard and his estate;

(6)     committing "fraud upon the court" by the judge McCarver not having jurisdiction over the petition, appointing counsel for Richard and any extensions of the temporary guardianship/conservatorship over Richard and his estate;

(7)     keeping Richard falsely incarcerated at MARMC geriatric ward through actions of Rohrer appointed by McCarver who did not have jurisdiction resulting in a void Consent Judgment appointing Rohrer to the temporary guardianship/conservatorship over Richard and his estate or extending such;

(8)     keeping Richard falsely incarcerated at The Arbor through actions of Rohrer and The Arbors where Richard's estate was charged for such false incarceration and administering to Richard psychotropic drugs without his consent; and

(9)     causing Richard emotional and physical stress; and

(10)    charging Richard's estate for the costs and fees of the temporary guardianship/conservatorship over Richard and his estate, amongst other things.

147.    The aforementioned actions directly caused Richard to be falsely imprisoned in the MARMC geriatric ward and The Arbors [loss of life], be drugged without his consent with psychotropic drugs at the MARMC geriatric ward and The Arbors [loss of life], suffer loss of money [loss of property], suffer emotional distress and suffer physical stress [loss of life], amongst other things.

148.    Richard suffered damages in an amount to be determined at trial.

**WHEREFORE,** the Plaintiff prays for actual damages, exemplary damages, punitive damages, emotional stress, attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

### SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF FOR FRAUD ON THE COURT DIVERSITY OF CITIZENSHIP

149.    Richard re-alleges Paragraphs 1-120, Paragraphs 122-125, Paragraphs 127-131, Paragraphs 133-135, Paragraphs 137-139, Paragraphs 141-144, and Paragraphs 145-148.

150.    Defendants, and each of them, acted in concert in which they engaged in a scheme to conceal from Richard Lee Wann and the Court the following:

(1)    Darlene Wann (Robert Wann's wife and Judge McGarver's first cousin) told Dr. Forsyth's office that the Plaintiff had an "altered mental status, talked to his dead parents, and talked about a home he does not have;

(2)    No medical or treatment records existed of any mental or alcoholic condition or diagnosis prior to giving the Plaintiff psychotropic drugs;

(3)    The Plaintiff was given psychotropic drugs before court dates to render him incompetent for examination by the Court and to prevent him from being able to defend himself;

(4)    The report that the Plaintiff had three (3) cancerous polyps in his intestines and needed further examination and treatment as well as emergency appointment of a temporary guardian and conservator was false.

(5)    The false cancer information and report was used to designate the Plaintiff as a hospice patient and to put the Plaintiff in a nursing home.  The Plaintiff did not meet the criteria to go into a nursing home otherwise.

(6)     When the Plaintiff became more oriented by hiding and flushing his psychotropic medications down the toilet instead of taking them, the Plaintiff was isolated and two attendants were sent to intimidate and pressure the Plaintiff to take the psychotropic medications.

(7)     Americare prevented, inhibited or restricted the Plaintiff's communications with his children and others to get assistance and legal counsel by seizing his cell phone and restricting his communications.

(8)     Plaintiff's requests to be discharged from the geriatric psychiatric unit the day after admission was ignored.

(9)     Dr. Ahmad Ardekani's notes state that the Plaintiff had no history or medical records or diagnosis of dementia.  Without having seen the Plaintiff he prescribe psychotropic medications.

(10)     Americare's refusing to furnish all treatment records, especially nursing home records, pursuant to a subpoena issued.  Instead, the records were filtered through Defendant Rohrer's office.  Americare's refusal to furnish all treatment records a second time when subpoenaed after divulging to them that many records were missing, thus concealing the records from the Plaintiff and denying the Court its right to conduct a fair examination with all the facts.

(11)     Farmington Missouri Hospital Company's refusal to furnish all treatment records from Mineral Area Regional Medical Center when subpoenaed by stating they could not be furnished because the copy machine was broken.  Farmington Missouri Hospital Company's refusal to furnish after being subpoenaed a second time for all treatment records from Mineral Area Regional Medical Center after divulging to them that all the records had not been disclosed.  Third, fourth and fifth requests for records were made and more documents were disclosed after the Plaintiff proved his competence through a thorough examination and a nearly fifty page

report by Dr. Alan Felthouse.  By failing to comply with the subpoenas and requests, the

Defendants concealed from the Plaintiff and denied the Court the facts necessary to have an

examination done.  Many records were missing and not readable thus denying the Court its right

to conduct a fair examination with all the facts.

    (12)    Defendant's refusal to furnish all the records obtained by them on Richard Lee

Wann pursuant to a subpoena thus concealing from the Plaintiff and denying the Court the right

to conduct a fair examination.

    (13)    Defendant's renewing of temporary guardianship and temporary conservatorship

without a hearing to the detriment of the Plaintiff, even when physicians ended all such

psychotropic medications in October or November, 2014.

    151.    The actions of the Defendants, and each of them, acted in concert to

    (1)    Drug the Plaintiff so he would not be able to pass any mental examination;

    (2)    Presented false facts to the Court and other parties.

    (3)    Used the false facts to incarcerate or to maintain the incarceration of the Plaintiff.

    (4)    Presented misleading records about the Plaintiff but not disclosing the drugs given

to Plaintiff or the rest of the story.

    152.    The representations made by the Defendants were false and material.

    153.    In the Consent Judgment dated June 13, 2013 the order stated:

"10. The parties stipulate and agree that the Ward/Protectee is in need of medical
and psychological diagnosis and treatment for it is believed the Ward/Protectee is
suffering from alcohol related dementia and has been further diagnosed with a colon
invasive carcinoma."

    154.    Theresa Brown, as Petitioner, made the arrangements for evaluation, testing, and

treatment with Barnes Hospital staff.  The order stated:

"13.  As soon as possible, and after the Barnes Hospital staff accepts the referral, the Petitioner shall make prompt arrangements to have the Ward/Protectee transported from the Farmington to Barnes-Jewish facility by ambulance or other approved method of transportation for evaluation, testing, treatment and evaluation."

155.    The actions of the Defendants, and each of them acting in concert through V. Kenneth Rohrer and the Public Administrator's office was to reject the referral to the Barnes staff because the doctor was a woman.

156.    The Defendants made no efforts to get the evaluation, testing and treatment done until December 2013.

157.    The medical report used by the Defendants on its face was not the Plaintiff's because it was sent by the laboratory before the colonoscopy was done and specimen taken. Subsequent examination by the Plaintiff's doctors verified he had no cancer.

**WHEREFORE,** the Plaintiff prays for declaratory relief, that all decisions of Judge Shawn Ragan McCarver in 13SF-PR00115 be declared null and void for lack of jurisdiction and for  attorney's fees, costs of this suit and such other relief which the Court deems necessary and appropriate.

## JURY TRIAL BY DEMAND

Plaintiff demands trial by jury.

Dated: _6 - 8 - 2015_

Respectfully submitted,

Stephen C. Banton, MBE#22693
Attorney for Plaintiff
14611 Manchester Road
Manchester, MO  63011-3700
Tel: (636) 394-7242
Fax: (636) 394-8679

## VERIFICATION

STATE OF CALIFORNIA      )
                                     ) ss.

COUNTY OF TULARE         )

I, Richard Lee Wann, declare as follows:

I am the Plaintiff herein. I have read the foregoing Verified Complaint and know its contents. The facts alleged in the Verified Complaint are within my own knowledge and I know these facts to be true. As to those facts alleged upon information and belief, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Verification was executed on this 5th day of June, 2015 at Porterville, California.

_____
Richard Lee Wann

Subscribed and sworn to before me this 5th day of June, 2015.

ALEJANDRO PRADO
COMM.# 2094661
NOTARY PUBLIC · CALIFORNIA
TULARE COUNTY
My Comm. Expires Dec. 23, 2018

_____
Notary Public

My Commission expires: Dec. 23, 2018