UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD LEE WANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV895 CDP |
| | ) | |
| ST. FRANCOIS COUNTY, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Richard Lee Wann brings this action against state and private actors alleging that he was unlawfully confined at healthcare facilities and was involuntarily administered psychotropic medications so that he would be rendered incompetent and in need of a guardian and/or conservator *ad litem.* Wann contends that the ultimate appointment of the public administrator as guardian/conservator *ad litem* perpetuated this unlawful conduct, which in turn caused him physical, emotional, and economic injuries, including the reduction of his estate. In his complaint, Wann brings claims under 42 U.S.C. §§ 1983 and 1985(2), as well as a number of claims under Missouri state law. He names as defendants St. Francois County, Public Administrator V. Kenneth Rohrer, Edward Pultz (an attorney for Rohrer), Brice Reed Sechrest (an attorney once appointed to represent plaintiff),

Judge Shawn Ragan McCarver, Farmington Missouri Hospital Company, Dr. Ahmad Ardekani, Social Worker Nicole Rotter, and Americare at Maplebrook Assisted Living.

I conclude that Wann has adequately stated claims against defendants Dr. Ardekani, MSW Rotter, Farmington (as owner of Mineral Area Regional Medical Center), and Americare (which operated The Arbors) for unlawful imprisonment (Counts 3 and 4) and for intentional and negligent infliction of emotional distress (Counts 5 and 6). All other claims and all other defendants will be dismissed for various legal reasons as discussed below.

## BACKGROUND[1]

On May 3, 2013, Wann was admitted to Mineral Area Regional Medical Center (MARMC), which is owned by defendant Farmington Missouri Hospital Company, after falling at his home. He was not released from MARMC after being treated, however, but instead was admitted to Behavioral Health in MARMC's geriatric ward and was given psychotropic medications as ordered by defendant Dr.

---

[1] For purposes of this Memorandum and Order, the Court considers the allegations of plaintiff's complaint and also takes judicial notice of the public record in the case of *In the Matter of Richard Lee Wann*, No. 13SF-PR00115, Circuit Court of St. Francois County, Missouri, Probate Division. I may take judicial notice of public records and consider them on a motion to dismiss. *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003). The parties have provided the Court with copies of several documents from Wann's probate case, and I have reviewed the proceedings as documented at http://www.courts.mo.gov/ casenet (last visited Dec. 8, 2015). To the extent Wann and several defendants request that I take judicial notice of this public record [ECF #36, #53], those requests will be granted.

Ahmad Ardekani.   He alleges that as a result he experienced hallucinations and confusion.   Dr. Ardekani and defendant MSW Nikki Rotter participated in Wann's care while he was admitted to MARMC's geriatric ward.   During this admission, MSW Rotter noted in Wann's medical record that he had had a major decline in life skills and could not reside alone because of his lack of cognitive abilities.

On May 16, MSW Rotter sent Wann's information to the St. Francois County Public Administrator (PA) to begin guardianship and/or conservatorship proceedings.   Although Wann was scheduled to be released from MARMC on May 16, Dr. Ardekani and MSW Rotter extended Wann's release date to May 24.

On May 17, defendant PA V. Kenneth Rohrer filed a petition in probate court for the emergency appointment of a temporary guardian on behalf of Wann.   The petition was accompanied by Dr. Ardekani's deposition.   Wann's daughter, Theresa Brown, likewise filed a petition to be appointed as temporary guardian/conservator, to which Wann's son consented.   The probate court appointed defendant Brice Sechrest as counsel for Wann.

In the meanwhile, Dr. Ardekani and MSW Rotter extended Wann's MARMC release date from May 24 to May 30.   They later extended the release date to June 6. On June 4, however, Wann was transferred to another care facility, The Arbors, whereupon he continued to receive psychotropic medications.

On June 10, the probate court held a hearing on the petitions for temporary

guardianship/conservatorship, over which defendant Associate Circuit Judge Shawn Ragan McCarver presided.   In addition to PA Rohrer and Theresa Brown, Wann's brother, Robert, appeared at the hearing.   As an attorney, Judge McCarver had previously represented Robert in a separate probate matter involving conservatorship and guardianship issues relating to Pearl Eunice Wann, the mother of Robert Wann and Richard Wann, the plaintiff here.[2]   Wann avers in his complaint that he and Robert were adversaries in that action.   Judge McCarver is also the cousin of Darlene Wann, Robert's wife.[3]

On June 13, Judge McCarver entered a consent judgment appointing PA Rohrer as temporary guardian *ad litem* over Wann and as temporary conservator *ad litem* over his estate for a thirty-day period.   Various other provisions were made in the order, including the payment of fees for attorney Sechrest, the surrender by Theresa Brown of Wann's financial documents, authorization to transfer Wann from MARMC to The Arbors, and making arrangements for Wann to be examined for possible medical and surgical intervention given his diagnosis of colon invasive carcinoma.   After being appointed temporary conservator and guardian *ad litem*,

---

[2] *See In the Matter of Pearl Eunice Wann*, No. 24P069600996, St. Francois Circuit Court, Probate Division.   The public record on http://www.courts.mo.gov.casenet shows that the action was filed in January 2000 and remained pending before the probate court until May 2005.
[3] In his complaint, Wann contends that Darlene had previously informed medical staff at MARMC that he had an altered mental state in that he talked about his deceased parents as if they were still alive and talked about a home he did not have.   She also reported having observed a tremor in Wann's hands and that his family indicated that he could not be trusted at home alone.

PA Rohrer sought and obtained from Judge McCarver several extensions of this appointment through December 2013.

Beginning in August 2013, Theresa Brown sought to modify the terms of the consent judgment and also filed a motion for contempt. Judge McCarver designated the proceeding as adversary and PA Rohrer began propounding discovery requests to Brown. Judge McCarver permitted PA Rohrer to retain attorney Edward Pultz to represent him in the proceedings; privately retained counsel, Stephen Banton, entered an appearance on behalf of Wann.[4] On December 17, Judge McCarver struck Banton's entry of appearance and related filings from the record, as well as all of Brown's pleadings. This ruling was later set aside and attorney Banton was permitted to continue as Wann's counsel.

On January 30, 2014, Judge McCarver adopted a stipulated agreement whereby Wann was permitted to return to his private residence. PA Rohrer was continued in his appointment as temporary guardian/conservator *ad litem*, and Judge McCarver thereafter continually granted PA Rohrer's requested extensions of this appointment. On June 10, 2014, PA Rohrer filed a motion to dismiss without prejudice and also moved the court to approve final settlement. In an order dated June 27, Judge McCarver ordered that attorneys' fees, PA Rohrer's fees and expenses, and associated bills be paid from Wann's estate. Rohrer's appointment

---

[4] Banton is Wann's counsel of record in this case.

as temporary guardian was terminated, but he was ordered to continue as temporary conservator to wind up the affairs of the estate.

On July 10, 2014, upon PA Rohrer's request, Judge McCarver dismissed the case without prejudice.

## THE COMPLAINT

Wann, through his counsel Banton, brings his claims in an extensive fifty-seven-page, seven-count complaint against St. Francois County, PA Rohrer, attorneys Pultz and Sechrest, Judge McCarver, Farmington Missouri Hospital Company (as owner of MARMC), Dr. Ardekani, MSW Rotter, and Americare (as operator of The Arbors). All claims are brought against all defendants:

**Count 1**:    42 U.S.C. § 1983 – that the defendants acted in concert under color of state law to cause him to be falsely imprisoned in the MARMC geriatric ward and The Arbors; to be drugged with psychotropic medications without his consent at the MARMC geriatric ward and at The Arbors; to suffer loss of money; and to suffer emotional distress and physical stress. Wann alleges that defendants' conduct violated his First Amendment right to petition the government and access the court; his Fifth Amendment right to due process in his loss of property; his Sixth Amendment right to counsel; and his Fourteenth Amendment right to due process.

**Count 2**:    42 U.S.C. § 1985(2) – that the defendants acted in concert to deny him equal protection of the laws by impeding, hindering, obstructing, or

defeating the due course of justice.

**Count 3**:     Unlawful Imprisonment

**Count 4:**     Unlawful Imprisonment by Chemical Restraint and Battery

**Count 5:**     Intentional Infliction of Emotional Distress

**Count 6:**     Negligent Infliction of Emotional Distress

**Count 7:**     Declaratory Relief for Fraud on the Court – requesting that

Judge McCarver's decisions in 13SF-PR00115 be declared null and void inasmuch
as he lacked jurisdiction over the action.

Wann invokes this Court's federal question jurisdiction as to Counts 1 and 2
of the complaint.   Regarding his state law claims in Counts 3 through 7, Wann
invokes diversity jurisdiction under 28 U.S.C. § 1332(a) alleging that he is citizen of
California, all defendants are citizens of Missouri, and the amount in controversy
exceeds $75,000.

Defendants' various motions to dismiss argue that some or all of Wann's
claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter
jurisdiction.   Defendants also argue that some or all of Wann's claims should be
dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   Each of the
defendants base their arguments on different theories, which I will discuss in detail
below.   For the following reasons, the claims raised in Counts 1, 2, and 7 will be
dismissed.   All remaining claims against defendants St. Francois County, PA

Rohrer, attorneys Pultz and Sechrest, and Judge McCarver will also be dismissed. The claims raised in Counts 3 through 6, however, will survive as to defendants Ardekani, Rotter, Farmington, and Americare.

## DISCUSSION

<u>Motions to Dismiss for Lack of Subject-Matter Jurisdiction – Rule 12(b)(1)</u>

All defendants move to dismiss Wann's complaint under Fed. R. Civ. P. 12(b)(1), arguing that the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction over the claims.

Under the *Rooker-Feldman* doctrine,[5] lower federal courts lack subject-matter jurisdiction over challenges to state court judgments and are thus barred from hearing claims that "in effect constitute a challenge to a state court decision." *Ballinger v. Culotta,* 322 F.3d 546, 548 (8th Cir. 2003); *see also Lemonds v. St. Louis Cnty.*, 222 F.3d 488, 492 (8th Cir. 2000). Except for habeas petitions, the United States Supreme Court is the only federal court with jurisdiction to consider the appeal of a state court judgment. *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.,* 487 F.3d 1154, 1156 (8th Cir. 2007). This does not mean a district court is deprived of jurisdiction in every case in which a plaintiff seeks a result different from the one it obtained in state court. *Id.* at 1157. "Rather, *Rooker-Feldman* is implicated in that

---

[5] The *Rooker-Feldman* doctrine is derived from two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it." *Id.*

To assess whether *Rooker-Feldman* applies in a particular case, a federal court must determine whether the claim before it is "inextricably intertwined" with the claim already decided in the state court. *Silverman v. Silverman,* 338 F.3d 886, 893 (8th Cir. 2003). A claim is inextricably intertwined "if it succeeds only to the extent that the state court wrongly decided the issues before it or if the relief requested would effectively reverse the state court decision or void its ruling." *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1034-35 (8th Cir. 1999). The doctrine does not bar a claim that is "separable from and collateral to the merits of the state-court judgment." *Id.* at 1034 (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 21 (1987) (Brennan, J., concurring)). The doctrine does not bar federal district courts from considering claims "attacking an adverse party's actions in obtaining and enforcing that [state-court] decision." *MSK EyEs Ltd. v. Wells Fargo Bank, N.A.,* 546 F.3d 533, 539 (8th Cir. 2008).

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Riehm v. Engelking,* 538 F.3d 952, 965 (8th Cir. 2008) (quotation omitted). Under

these standards, Counts 1 through 6 of Wann's complaint are not barred by the *Rooker-Feldman* doctrine. Count 7 is barred, however, and will be dismissed.

*Counts 1 through 6*

In Counts 1 through 6 of his complaint, Wann does not ask this Court to decide an issue that was already decided in state court. Nor does he challenge or seek relief from any state court order or judgment. Instead, Wann contends that the defendants' conduct in bringing about state court action was unlawful in itself, causing him injury. The alleged injuries for which Wann seeks redress is not from the state court judgment. Rather, his alleged injuries arose from circumstances separate from the judgment, that is, the allegedly unlawful manner by which the defendants brought about the state court proceedings in the first place. Because Wann challenges the actions of the defendants in Counts 1 through 6, rather than the effect of any state court judgment, *Rooker-Feldman* does not apply to these claims. *See Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 703 (7th Cir. 1998), cited approvingly in *Skit Int'l*, 487 F.3d at 1157.

*Count 7*

In Count 7, however, Wann claims that defendants' actions amounted to fraud upon the probate court, which prevented the court from conducting a fair examination of the proceeding. Wann contends that on account of this fraud, the court, and specifically, Judge McCarver, lacked jurisdiction over the proceeding and

that all of the decisions in the case are therefore null and void.   Wann's

complained-of injuries in Count 7 are the state-court orders allegedly procured

through fraud.   Because Wann complains of the state-court orders themselves and

indirectly seeks reversal of those orders through his claim of fraud, the claim is

barred by *Rooker-Feldman*.   *See Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d

1156, 1163 (D. Minn. 2013) (citing *Fielder*, 188 F.3d at 1035-36; *Moon v. Chicot

Cnty. Ark. Legal Assocs.*, 170 Fed. Appx. 988, 989 (8th Cir. 2006)).

Count 7 will therefore be dismissed for lack of subject-matter jurisdiction.

### Motions to Dismiss for Failure to State a Claim – Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal

sufficiency of the complaint.   When considering a Rule 12(b)(6) motion, the court

assumes the factual allegations of a complaint are true and construes them in favor of

the plaintiff.   *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).   Matters of public

record referenced in a complaint may be considered by the court in determining a

Rule 12(b)(6) motion to dismiss for failure to state a claim.   *Stahl v. U.S. Dep't of

Agric.,* 327 F.3d 697, 700 (8th Cir. 2003); *Deerbrook Pavilion, LLC v. Shalala,* 235

F.3d 1100, 1102 (8th Cir. 2000).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint

must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief."   In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme

Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555; *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly,* 550 U.S. at 570. The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). The issue in determining a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

Against this backdrop, I turn to defendants' arguments that the remaining counts of Wann's complaint fail to state a claim upon which relief can be granted. Because defendants raise separate legal theories to support their respective arguments, I address the claims of each defendant, individually, below.

**Defendant St. Francois County:**

*Count 1 – 42 U.S.C. § 1983*

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the

alleged deprivation was committed by a person acting under color of state law.
*West v. Atkins*, 487 U.S. 42, 48 (1988).

A governmental entity cannot be held vicariously liable for its agent's acts under § 1983. *Brockington v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978)). Nor can it be liable under § 1983 "unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694) (emphasis in *Brown*). To recover from a governmental entity under § 1983, a plaintiff must identify a governmental policy or custom that caused his injury. *Brockington*, 503 F.3d at 674.

> A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy. A governmental custom involves a pattern of persistent and widespread . . . practices which bec[o]me so permanent and well settled as to have the effect and force of law.

*Id.* (internal quotation marks and citations omitted) (alterations in *Brockington*). A plaintiff's failure to include any allegations, reference, or language from which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom of the governmental entity renders the complaint deficient as to that entity. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d

588, 591 (8th Cir. 2004).

The only County policy arguably identified in Wann's complaint is its "see[k]ing of guardianships over the persons and conservatorships over the property of the estates of persons in hospitals."  (Compl., ECF #1 at pp. 30-31.)  Wann alleges no facts in his complaint, however, showing that such a policy is unconstitutional.  While Wann claims that he was personally injured by the alleged unconstitutional acts of a County employee, this alone does not permit an inference of municipal culpability and causation.  *Brown*, 520 U.S. at 406-07.  Instead, a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate his rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  *Id.* at 407.  Wann makes no such allegation against St. Francois County in his complaint.

Count 1 will be dismissed against St. Francois County for failure to state a claim.

*Count 2 – 42 U.S.C. § 1985(2)*

Wann brings Count 2 under the second portion of 42 U.S.C. § 1985(2), which provides for a person to recover if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal

protection of the laws[.]

Because this portion of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws, "'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Kush v. Rutledge*, 460 U.S. 719, 725-26 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). A complaint that fails to allege race or other class-based hostility fails to state a claim under the second portion of § 1985(2). *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1430 (8th Cir. 1986); *Lamb v. Farmers Ins. Co., Inc.*, 586 F.2d 96, 97 (8th Cir. 1978).

The complaint here is devoid of necessary allegations concerning racial or other class-based hostility and that the defendants conspired against Wann because of his membership in a class defined in an invidiously discriminatory manner. Wann has thus failed to state a claim under 42 U.S.C. § 1985(2), and Count 2 will be dismissed in its entirety against all defendants.[6]

*Counts 3 through 6 – State Law Claims*

---

[6] To the extent Wann argues that the Fourteenth Amendment's Equal Protection Clause recognizes a "class of one," citing *Barstad v. Murray Cnty.*, 420 F.3d 880 (8th Cir. 2005), I note that Count 2 is brought under 42 U.S.C. § 1985(2) and not the Fourteenth Amendment. Nevertheless, Wann does not allege in his complaint that he was treated differently from similarly situated individuals and thus has not stated a viable Fourteenth Amendment equal protection claim. *See Rodgers v. University of Mo. Bd. of Curators*, 56 F. Supp. 3d 1037, 1053-54 (E.D. Mo. 2014); *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 935-36 (D. Minn. 2014).

Under Mo. Rev. Stat. § 537.600, public entities, such as St. Francois County, are entitled to sovereign immunity when they are engaged in governmental functions, unless immunity is waived, abrogated, or modified by statute.

*Richardson v. City of St. Louis,* 293 S.W.3d 133, 136-37 (Mo. Ct. App. 2009).

> A municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (section 537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function (*State ex rel. Board of Trustees of the City of North Kansas City Memorial Hospital,* 843 S.W.2d 353, 358 (Mo. banc 1993)); and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610).

*Bennartz v. City of Columbia,* 300 S.W.3d 251, 259 (Mo. Ct. App. 2009). When bringing claims against a public entity, a plaintiff "bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity[.]" *Richardson*, 293 S.W.3d at 136-37.

Here, Wann's complaint does not claim that an exception to sovereign immunity applies in this case, nor does it allege facts giving rise to such an exception. In response to the County's motion to dismiss, Wann argues that the County failed to aver that it did not have insurance and thereby conceded its waiver of sovereign immunity, as demonstrated by its citation to § 537.610. It is well

established in Missouri, however, that sovereign immunity is not an affirmative defense. *Richardson*, 293 S.W.3d at 137. "Accordingly, to state a cause of action sufficient to survive a motion to dismiss on the pleadings, the petition, when viewed in its most favorable light, must plead facts, which if taken as true, establish an exception to the rule of sovereign immunity." *Id.* (internal citation and quotation marks omitted). Wann has failed to do so here, and his state law claims against St. Francois County will be dismissed for failure to state a claim.

**Defendant Honorable Shawn Ragan McCarver:**

Judges generally have absolute immunity from suits for money damages for their judicial actions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). This immunity is "from suit, not just from ultimate assessment of damages," *id.* at 11, and applies to all legal claims challenging judicial acts, including claims brought under 42 U.S.C. §§ 1983 and 1985. *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994); *White v. Bloom*, 621 F.2d 276, 279-80 (8th Cir. 1980). "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also Stump v. Sparkman,* 435 U.S. 349, 356 (1978). A judge is not immune for actions, however, taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 12; *Martin v. Hendren,* 127 F.3d 720, 721 (8th Cir. 1997). The scope of a judge's jurisdiction is broadly construed when relating to judicial immunity. *Stump,* 435 U.S. at 356.

Although Wann contends that Judge McCarver's actions were done in the absence of all jurisdiction and thus that his claims against the judge may proceed, the circumstances of the state court case as alleged in the complaint and as shown by the public record shows that judicial immunity applies to Judge McCarver's actions. Accordingly, all claims against him will be dismissed.

In his complaint, Wann contends that Judge McCarver's relationship with Robert Wann – both in his representation of Robert in a prior adversary proceeding and as the cousin of Robert's wife, Darlene – required him to recuse himself from presiding over Richard Wann's probate matter given that he learned information about Richard through these relationships, which prejudiced him in the proceeding. Wann contends that these circumstances rendered Judge McCarver disqualified from presiding over the case, thereby requiring him to transfer the matter under Mo. S. Ct. R. 51 for reassignment to another judge. Wann argues that Judge McCarver's failure to transfer the case rendered him without jurisdiction over the probate matter, thereby stripping him of judicial immunity for his actions.

A disqualified judge lacks jurisdiction to rule on any matters that did not precede a proper objection seeking disqualification. *State v. Taylor*, 929 S.W.2d 209, 219 (Mo. banc 1996); *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 944 (Mo. banc 1986). If a litigant is facing a prejudiced or biased judge, due process permits him to remove the judge. *State v. Nunley*, 923 S.W.2d 911, 918 (Mo. banc 1996);

*Thomas v. State,* 808 S.W.2d 364, 367 (Mo. banc 1991).

To disqualify a judge in probate court, Mo. Rev. Stat. § 472.060 requires a party in interest to object in writing with verification by affidavit. The statute provides for the matter to be transferred to another judge upon the filing of such objections. *Id.* If a motion under § 472.060 is in proper form and not waived by delay, "the disqualification is 'automatic[.]'" *State ex rel. Stephens v. Lamb*, 883 S.W.2d 101, 103 (Mo. Ct. App. 1994) (quoting *Kohn*, 731 S.W.2d at 842). "The exercise of the right to disqualify a judge requires strict compliance with the provisions of the rule." *Whalen, Murphy, Reid, Danis, Garvin & Tobben v. Estate of Roberts*, 711 S.W.2d 587, 591 (Mo. Ct. App. 1986). A probate judge is not disqualified, and thus does not lose jurisdiction, where a party fails to strictly comply with § 472.060, including its requirement to file an affidavit. *Id.* Missouri Supreme Court Rule 51.05 does not apply to matters in probate court unless so ordered by the probate judge. *Id.* Without such an order, a party may not rely on Rule 51.05's procedures to remove a probate judge. *Id.*

A review of the public record in *In the Matter of Richard Lee Wann* shows that Wann never invoked § 472.060 in the probate court to disqualify Judge McCarver. To the extent Wann argues that his January 2014 petition to the Missouri Court of Appeals for writ of prohibition adequately sought Judge

McCarver's recusal,[7] a review of the petition shows that it did not comply in any respect with § 472.060, including its requirement for verification by affidavit.[8] Because Wann failed to comply with § 472.060, Judge McCarver was never disqualified from the probate proceeding and did not lose jurisdiction over the case.

Wann argues that Judge McCarver was nevertheless subject to mandatory recusal given his relationship with Robert and his receipt of information from prior proceedings. The judge is in the best position to determine if recusal is necessary against claims of bias and prejudice inasmuch as such circumstances may vary for different judges within a circuit. *Nunley*, 923 S.W.2d at 917. It is presumed that judges will not undertake to preside over a proceeding in which they cannot be impartial. *State ex rel. Ferguson v. Corrigan*, 959 S.W.2d 113, 116 (Mo. banc 1997). A judge must first determine the recusal issue before a court of appeals will address the merits of the question. *Id.* Nevertheless, a judge's determination of a motion for recusal is itself a judicial act that falls within the protection of absolute judicial immunity. *See Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986).

In the probate court, Wann never moved for Judge McCarver to recuse himself based on his relationship with Robert or on information he gleaned from previous proceedings. To the extent Wann raised this issue before the court of

---

[7] *See State ex rel. Richard Wann v. Shawn McCarver*, No. ED100938, Missouri Court of Appeals, http://www.courts.mo.gov.casenet. Wann subsequently withdrew the petition. *Id.*
[8] ECF #53-3, Pltf.'s Mot. for Jud. Not. of St. Ct. Proc, Exh. C.

appeals in his petition for writ of prohibition, he withdrew the petition before any determination. Whether or not Judge McCarver was privy to extraneous information, was biased against Wann, or should have recused himself does not abrogate the immunity absent a lack of jurisdiction. Judicial immunity is not overcome by allegations of bad faith or malice, and applies even when the judge is accused of acting maliciously and corruptly. *Mireles*, 502 U.S. at 11; *Pierson*, 386 U.S. at 554.

Accordingly, because Judge McCarver's challenged actions were judicial in nature and were not taken in the complete absence of all jurisdiction, he is entitled to absolute judicial immunity for the claims brought against him in this action. *See Mireles*, 502 U.S. at 11. Wann's complaint is therefore dismissed against Judge McCarver in all respects.

**Defendant V. Kenneth Rohrer:**

*Count 1 – 42 U.S.C. § 1983*

Absolute quasi-judicial immunity protects officials for acts they are required to do under court order or at a judge's direction. *Robinson v. Freeze,* 15 F.3d 107, 109 (8th Cir. 1994). The order must be related to the judicial function. *Martin,* 127 F.3d at 721.

Wann alleges in his complaint that PA Rohrer unlawfully caused him to be housed at MARMC and The Arbors and unlawfully charged his estate for fees

associated with such housing and the costs of guardianship/conservatorship. The complaint and the public records show, however, that PA Rohrer acted only in accordance with judicial decisions regarding Wann's care, including the provision of medical and psychological treatment and the approval of healthcare providers for such treatment. Judicial decisions specifically authorized Wann's residence at The Arbors and ordered Wann's estate to pay for the fees of residential care and the costs associated with guardianship/conservatorship. Judicial decisions also provided that the fees of Wann's own privately retained counsel be paid. In carrying out these judicial decisions, PA Rohrer is protected by quasi-judicial immunity. To the extent Wann contends that PA Rohrer nevertheless *acted* unlawfully in carrying out these decisions, my inquiry is controlled by the nature of the function being performed, not the particular act itself. *Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997). Absolute quasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly. *Id.*

To the extent Wann contends that PA Rohrer's *initiation* of guardianship proceedings in itself violated his constitutional rights, Rohrer is entitled to qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "A Rule 12(b)(6) dismissal based on qualified immunity is

appropriate 'when the immunity is established on the face of the complaint.'" *Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) (quoting *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997)).

In bringing guardianship proceedings here, PA Rohrer acted in accordance with Mo. Rev. Stat. § 475.060.2 by promptly petitioning for temporary guardianship based on information provided to him by hospital personnel. Wann presents nothing in his complaint demonstrating that this action was unreasonable or that it violated any constitutional right so sufficiently clear that any reasonable official would understand that he was violating that right. *See McCuen v. Polk Cnty., Iowa*, 893 F.2d 172, 174 (8th Cir. 1990) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Wann's complaint alleges, and public records show, that PA Rohrer filed a petition for emergency temporary guardianship one day after MSW Rotter provided information to him regarding the appointment of a guardian, and such petition was accompanied by Dr. Ardekani's deposition. Upon the filing of the petition, Wann's daughter likewise sought appointment as temporary guardian. Within one month of PA Roher's initiation of guardianship proceedings, the probate court held a hearing on both Rohrer's and Brown's petitions and entered an order appointing PA Rohrer as temporary guardian.

This information fails to show that PA Rohrer's action in petitioning for temporary guardianship violated any of Wann's clearly established statutory or

constitutional rights of which a reasonable person would have known. *Contra Whisman*, 119 F.3d at 1310 (qualified immunity denied to state official where child taken and held with no investigation and state proceedings filed after inordinate delay). Accordingly, PA Rohrer is entitled to qualified immunity for his conduct that occurred before the entry of any court order for which he is not protected by quasi-judicial immunity.

Because the doctrines of absolute quasi-judicial immunity and qualified immunity protect PA Rohrer from Wann's § 1983 claims against him in Count 1 of the complaint, Count 1 will be dismissed as to defendant Rohrer.

*Counts 3 through 6 – State Law Claims*[9]

Court officers whose conduct is intimately associated with the judicial phase of the judicial process are protected by absolute judicial immunity. *White v. Camden Cnty. Sheriff's Dep't*, 106 S.W.3d 626, 633 (Mo. Ct. App. 2003) (quoting *Burns v. Reed*, 500 U.S. 478, 492 (1991)). "The reasoning for the grant of official judicial immunity to [such] officers executing facially valid court orders is 'essential if the court's authority and ability to function are to remain uncompromised.'" *Id.* (quoting *Coverdell v. Department of Social & Health Servs.*, 834 F.2d 758, 765 (9th Cir. 1987)). "[I]t is simply unfair to spare the judges who give orders while

---

[9] Invoking this Court's diversity jurisdiction, Wann brings these claims under Missouri state law. While the analysis is similar to that applied to Wann's federal claims, I apply Missouri law to these claims. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 111-12 (1945).

- 24 -

punishing the officers who obey them.   Denying these officials absolute immunity for their acts would make them a lightning rod for harassing litigation aimed at judicial orders."   *Id.* (internal quotation marks and citation omitted) (alteration in *White*).

As discussed *supra*, PA Rohrer carried out Judge McCarver's orders by providing Wann with medical and psychological treatment, approving healthcare providers, arranging residential care, and paying for costs associated with guardianship/conservatorship, including attorneys' fees.   To the extent Wann's state law claims challenge these actions, PA Rohrer is protected by absolute judicial immunity.   *White*, 106 S.W.3d at 633.   To hold otherwise would require court officers enforcing facially valid orders "to act as pseudo-appellate courts scrutinizing the orders of judges."   *Id.* (internal quotation marks and citation omitted).   This result is "obviously untenable."   *Id.* (internal quotation marks and citation omitted).[10]

Regarding Wann's contention that PA Rohrer engaged in unlawful conduct in relation to the *initiation* of guardianship proceedings, Rohrer is entitled to official immunity to the extent Wann claims such conduct was negligent.   Official immunity "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of

---

[10] Although Wann argues that the orders purportedly carried out by Rohrer were not valid given Judge McCarver's lack of jurisdiction over the probate case, I have already rejected this argument.

- 25 -

discretionary acts." *Rhea v. Sapp*, 463 S.W.3d 370, 375-76 (Mo. Ct. App. 2015)

(internal quotation marks and citation omitted). The act of determining how or

whether a petition for guardianship should be pursued requires a degree of

professional judgment. It is not of a clerical nature without regard to judgment or

opinion. It is therefore a discretionary act. *See Southers v. City of Farmington*,

263 S.W.3d 603, 610 (Mo. banc 2008) (discretionary versus ministerial acts).

Because PA Rohrer's act of initiating guardianship proceedings was

discretionary, he is entitled to official immunity to the extent Wann claims Rohrer

acted negligently in pursuing the action. Count 6 of the complaint, alleging

negligent infliction of emotional distress, will therefore be dismissed as to defendant

PA Rohrer.

The remaining state law claims allege intentional injurious conduct, and

specifically, unlawful imprisonment, unlawful imprisonment by chemical restraint

and battery, and intentional infliction of emotional distress. The doctrine of official

immunity does not apply to discretionary acts "done in bad faith or with malice."

*State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986); *see also*

*Mauzy v. Mexico Sch. Dist. No. 59*, 878 F. Supp. 153, 156 (E.D. Mo. 1995). "The

relevant definition of bad faith or malice . . . ordinarily contains a requirement of

actual intent to cause injury." *Twiehaus*, 706 S.W.2d at 447. While wrongful

intent must be pleaded, "further inquiry is necessary to determine whether the

factual allegations of the pleadings give rise to an inference of bad faith." *Id.*

> A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. . . . [B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Id.* (internal quotation marks and citations omitted).

Under this standard, the allegations in Wann's complaint fail to state facts from which it could reasonably be inferred that PA Rohrer acted in bad faith or from an improper or wrongful motive by initiating guardianship proceedings. Instead, the complaint alleges only that PA Rohrer petitioned for temporary guardianship based on information provided to him by hospital personnel. Wann presents nothing in his complaint demonstrating that PA Rohrer was directly involved in his alleged unlawful confinement at the hospital, the failure to release Wann from MARMC when originally scheduled, or the administration of psychotropic medication. There are no allegations that PA Rohrer had actual knowledge that the information provided to him for purposes of initiating guardianship proceedings was false or that Wann's mental and physical condition was intentionally manipulated so as to justify such proceedings.

Because Wann's complaint contains no allegation that PA Rohrer acted with malicious motive or purpose or engaged in conscious wrongdoing, Wann's claims of intentional unlawful conduct raised in Counts 3 through 5 fail to state claims against Rohrer that are not barred by the immunity doctrine. The state law claims asserted in Counts 3 through 5 of the complaint are therefore dismissed against defendant PA Rohrer.

**Defendants Edward Pultz and Brice Sechrest:**

*Count 1 – 42 U.S.C. § 1983*

Both Pultz and Sechrest were private attorneys either retained or appointed to represent PA Rohrer and Wann, respectively, in the proceedings before the probate court.[11] "The conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of section 1983 violations." *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (citing *Harkins v. Eldridge*, 505 F.2d 802, 803 (8th Cir. 1974) (per curiam); *Eling v. Jones*, 797 F.2d 697, 699 (8th Cir. 1986)). Nor is a mere allusion to a conspiracy between private counsel and state actors sufficient to state a § 1983

---

[11] Wann identifies Pultz in his complaint as an individual employed by the County (Compl., ECF #1 at para. 122), but appears to later concede to defendants' averment that Pultz is a private actor. (*See* Defts.' Memo. in Supp. of Joint Mot. to Dis., ECF #37 at p.6; Pltf.'s Oppos., ECF #52 at p. 50.) Regardless, as discussed *infra,* whether Pultz is considered to be a state or private actor, Wann's complaint contains no factual allegations showing that Pultz could be liable to Wann for any of the alleged unlawful conduct. *See Iqbal*, 556 U.S. at 676 (in a § 1983 action, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.") (emphasis added).

claim. *Id.* Instead, a plaintiff seeking to hold such private persons liable under §
1983 must allege, at the very least, that there was a mutual understanding, or
meeting of the minds, between these attorneys and the state actors regarding the
violation of plaintiff's constitutional rights. *Miller v. Compton,* 122 F.3d 1094,
1098 (8th Cir. 1997); *Smith v. Bacon*, 699 F.2d 343, 436 (8th Cir. 1983) (per curiam)
(allegations must at least include that "the defendants had directed themselves
toward an unconstitutional action by virtue of a mutual understanding" and provide
some facts suggesting a meeting of the minds).

Here, other than claiming that Pultz and Sechrest represented parties in the
guardianship proceedings, Wann fails to allege any facts suggesting that Pultz or
Sechrest and any state actor had a meeting of the minds where they jointly agreed to
violate Wann's constitutional rights. Count 1 will be dismissed as to Pultz and
Sechrest for failure to state a claim.

*Counts 3 through 6 – State Law Claims*

A.     Pultz

Wann filed an extensive complaint in this action, detailing with particularity
the actions he claimed caused his injuries and the dates upon which such actions
occurred. In this extensive complaint, he specifically references defendant Pultz on
two occasions. First, Wann generally identifies Pultz as "the attorney for the Public
Administrator V. Kenneth Rohrer in the case of *In the Matter of Richard Lee Wann.*"

(Compl. at para. 4.)   Wann later generally refers to Pultz as a County employee. (*Id.* at para. 122.)   In neither instance does Wann identify any specific action taken by Pultz.   Although within each count of the complaint, Wann generally refers to all defendants as acting "in concert" to deprive him of his constitutional rights and injure him under state law, he does not allege that Pultz took any specific action in relation to any of the claims.

To survive a motion to dismiss, the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.   Instead, it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).   Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not "'show[n] . . . that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in *Iqbal*).

Here, Wann's complaint does not allege facts that suggest that Pultz engaged in any wrongful conduct.   Instead, Wann claims only that Pultz was a County employee[12] and acted as Rohrer's attorney.   There is no illegal conduct in these

---

[12] *But see* n.11, *supra.*

actions.   Although Wann generally alleges that Pultz acted "in concert" with the other defendants to engage in unlawful conduct, he does not allege any facts showing that Pultz was a part of any agreement to engage in such conduct against him or to deprive him of any right.   This lack of an agreement would prohibit a reasonable jury from finding that Pultz participated in any conspiracy.   *See Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 685 (8th Cir. 1995) (lack of showing an agreement prevents plaintiff from recovering on state law conspiracy claim). Wann's mere inclusion of the words "acted in concert" in his complaint is insufficient to state allegations of common law conspiracy.   *See Ramsay v. Vogel*, 970 F.2d 471, 475 (8th Cir. 1992); *see also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1063-64 (8th Cir. 2005) (allusion to meeting of the minds without any specific allegations of collusion does not survive motion to dismiss).   To the extent, therefore, that Wann claims Pultz conspired with others to cause injury to him, he has failed to state a claim against Pultz.

Counts 3 through 6 will be dismissed against defendant Pultz for failure to state a claim upon which relief can be granted.

B.     Sechrest

Wann's state law claims against Sechrest suffer the same infirmities.   In his complaint, Wann specifically references Sechrest on three occasions:   first, that he was appointed by Judge McCarver to represent Wann (Compl. at para. 5); second,

that PA Rohrer sent a letter to The Arbors in November 2013 stating that he agreed with the medication "suggested by Mr. Sechrest who was . . . not a doctor" (*id.* at para. 113); and that "Sechrest worked against the interests of Richard" (*id.* at para. 122). While Wann thereafter generally refers to all defendants acting "in concert" to deprive him of his constitutional rights or injure him under state law, he identifies no specific action by Sechrest in relation to any of the claims raised in the complaint. Nor does he sufficiently allege facts showing that Sechrest was a part of any agreement to engage in illegal conduct against him or deprive him of any right.

Counts 3 through 6 will be dismissed against defendant Sechrest for failure to state a claim upon which relief can be granted.

**Defendants Farmington Missouri Hospital Co., LLC,
and Americare at Maplebrook Assisted Living, LLC:**

*Count 1 – 42 U.S.C. § 1983*

Wann contends in his complaint that Farmington either owns or controls MARMC and therefore is liable for MARMC's alleged unlawful conduct. Likewise, Wann contends that Americare controlled The Arbors and thus is liable for The Arbors' conduct. Neither defendant is a government actor.

To hold a private party liable under § 1983, a plaintiff must establish not only that the private actor caused a deprivation of constitutional rights, but that he willfully participated with state officials and reached a mutual understanding

concerning the unlawful objective of a conspiracy. *Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). A private corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (citing *Monell,* 436 U.S. at 690). "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Id.* A plaintiff's failure to plead that a private corporation has such policy or custom precludes relief against the corporation under § 1983. *Id.*

Here, Wann's complaint does not allege that either Farmington or Americare had a policy or custom of depriving individuals of their constitutional rights. In addition, because claims of *respondeat superior* are not cognizable in a § 1983 action, Farmington's purported employment of Dr. Ardekani and MSW Rotter does not make it liable under § 1983. *Sanders*, 984 F.2d at 975. Finally, an allegation that defendants submitted fraudulent bills to Medicare for Wann's care does not render them state actors for purposes of § 1983.

Count 1 will be dismissed as to defendants Farmington and Americare for failure to state a claim.

*Counts 3 through 6 – State Law Claims*

Farmington and Americare seek to dismiss Counts 3 and 4 only on the basis

that this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. I have previously determined *Rooker-Feldman* not to apply to the claims raised in Counts 3 and 4, so the defendants' motion to dismiss on this basis will be denied. Farmington and Americare raise no other ground upon which they seek to dismiss Counts 3 and 4 of the complaint. These counts will therefore proceed as to these defendants.

With respect to Counts 5 and 6, that is, intentional infliction of emotional distress and negligent infliction of emotional distress, respectively, Farmington and Americare argue that Wann fails to plead all the essential elements of the claims and thus fails to state a claim upon which relief can be granted. I disagree.

To properly plead negligent or intentional infliction of emotional distress, a plaintiff must allege, *inter alia*, that the emotional distress is medically diagnosable and is severe enough to be medically significant. *Ford v. Aldi, Inc.*, 832 S.W.2d 1, 2 (Mo. Ct. App. 1992) (negligent infliction of emotional distress); *Snelling v. City of St. Louis, Dep't of Pub. Utilities-Water Div.*, 897 S.W.2d 642, 646 (Mo. Ct. App. 1995) (intentional infliction of emotional distress). Defendants argue that Wann's claims in Counts 5 and 6 fail because he did not plead this required element. In his complaint, however, Wann alleges that he was involuntary medicated with psychotropic medications that caused him to experience hallucinations and to be diagnosed as having an altered mental state, and that the continued administration of

such medication was done for the purpose of maintaining his altered mental state so that he would remain subject to residential care through the guardianship/conservatorship proceedings.   At this stage of the case, these alleged facts are sufficient to show that Wann had a medically diagnosable emotional condition that was medically significant and caused by the conduct alleged.

Farmington's and Americare's motion to dismiss will be denied as to Counts 5 and 6 of the complaint.

**Defendants Dr. Ardekani and MSW Rotter:**

In his complaint, Wann alleges that Dr. Ardekani and MSW Rotter extended his MARMC release date so that guardianship proceedings could be instituted and, further, that they provided information to PA Rohrer so that a guardian could be appointed for Wann.   Wann further claims that Dr. Ardekani authorized the administration of psychotropic medications without his consent.   Wann contends that the continuous administration of these medications and his retention at MARMC was done to incapacitate him so that guardianship proceedings could be brought.

*Count 1 – 42 U.S.C. § 1983*

As with attorneys Pultz and Sechrest, Wann fails to allege any facts suggesting that these private persons and any state actor had a meeting of the minds where they jointly agreed to violate Wann's constitutional rights.   These private

persons therefore cannot be held liable under § 1983, and Count 1 of Wann's complaint will be dismissed as to them for failure to state a claim. *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

*Counts 3 through 6 – State Law Claims*

A.    Dr. Ardekani

As bases for dismissing the state law claims raised in Counts 3 through 6, Dr. Ardekani relies on the same arguments made by defendants Farmington and Americare, that is, that the *Rooker-Feldman* doctrine bars the claims raised in Counts 3 and 4, and that Wann failed to allege all elements of the claims raised in Counts 5 and 6.    For the reasons stated above with respect to Farmington's and Americare's arguments, these arguments likewise fail with regard to Dr. Ardekani. Wann's state law claims will therefore proceed against Dr. Ardekani.

B.    MSW Rotter

To the extent MSW Rotter likewise relies on Farmington's and Americare's arguments to dismiss Counts 3 through 6, her motion to dismiss will be denied. With respect to Count 4, however, Rotter raises an additional argument – that it fails to state a claim against her *if* it is brought as a medical malpractice claim.

In Count 4, Wann claims that he was subject to unlawful imprisonment by chemical restraint and battery, claiming that he was given psychotropic drugs without his consent for the purpose of keeping him confined to residential care.

Wann does not allege any elements of medical malpractice under Missouri law, *see, e.g., Newland v. Azan*, 957 S.W.2d 377, 378 (Mo. Ct. App. 1997), and indeed avers in response to MSW Rotter's argument that "Count IV is not for Medical Malpractice." (Pltf.'s Oppos., ECF #52 at p. 54.) Count 4 of Wann's complaint is not a claim for medical malpractice, and MSW Rotter's motion to dismiss on this basis will be denied.

## CONCLUSION

To Summarize, the following claims will go forward against defendants Dr. Ardekani, MSW Rotter, Farmington and Americare:

Count 3 (unlawful imprisonment), Count 4 (unlawful imprisonment by chemical restraint and battery), Count 5 (intentional infliction of emotional distress), and Count 6 (negligent infliction of emotional distress). All other claims will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Richard Lee Wann's Motion for Judicial Notice of State Court Proceedings [53] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's Motion to Strike defendant McCarver's sur-reply [73] is **DENIED.**

**IT IS FURTHER ORDERED** that the separate motions to dismiss filed by defendants St. Francois County and V. Kenneth Rohrer [44], defendant Honorable

Shawn Ragan McCarver [42], defendant Edward Pultz [40], and defendant Brice Sechrest [46] are **GRANTED**.

**IT IS FURTHER ORDERED** that the joint motion to dismiss filed by defendants Farmington Missouri Hospital Company, Dr. Ahmed Ardekani, MSW Nikki Rotter, Americare at Maplebrook Assisted Living, Edward Pultz, and Brice Sechrest [36] is **GRANTED in part and DENIED in part.** To the extent these defendants move the Court to take judicial notice of the state court proceedings, the motion is **GRANTED.**

**IT IS FURTHER ORDERED** that Counts 1 and 2 of plaintiff's complaint are dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**IT IS FURTHER ORDERED** that Count 7 of the complaint is dismissed without prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that defendants St. Francois County, V. Kenneth Rohrer, Honorable Shawn Ragan McCarver, Edward Pultz, and Brice Sechrest are dismissed from this cause of action.

**IT IS FURTHER ORDERED** that Counts 3, 4, 5, and 6 of plaintiff's complaint shall proceed against Farmington Missouri Hospital Company, Dr. Ahmed Ardekani, MSW Nikki Rotter, and Americare at Maplebrook Assisted

Living.

This case will be set for a Rule 16 scheduling conference by separate Order, and the remaining defendants are reminded of their obligation to answer the complaint within the time set by the rules.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2016.