UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RICHARD LEE WANN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:15 CV 895 CDP |
| ST. FRANCOIS COUNTY, MISSOURI, et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Plaintiff Richard Lee Wann filed this action on June 8, 2015, alleging that various state and private actors violated a number of his state and federal rights in relation to his confinement in health care facilities that led to guardianship/ conservatorship proceedings in St. Francois County probate court. A number of claims against a number of defendants were previously dismissed. (*See* Memo. & Order, ECF 83.) The claims that remain are those raised in Counts 3 through 6 of the complaint against defendants Farmington Missouri Hospital Company, Dr. Ahmad Ardekani, Social Worker Nicole Rotter, and Americare at Maplebrook Assisted Living, alleging unlawful imprisonment, unlawful imprisonment by chemical restraint and battery, and intentional and negligent infliction of emotional distress. These defendants now move to dismiss the claims without prejudice, arguing that Wann failed to file health care affidavits, which are required by Mo.

Rev. Stat. § 538.225 in actions related to the provision of health care services.

Because the allegations in Wann's complaint show that MSW Rotter is not a health care provider as that term is defined under the statute, Wann is not required to file a health care affidavit regarding his claims against her. His claims against Farmington, Dr. Ardekani, and Americare, however, require health care affidavits. Because he failed to file them as required under the statute, I must dismiss his claims against these defendants without prejudice.

## RELEVANT BACKGROUND

On May 3, 2013, Wann was admitted to Mineral Area Regional Medical Center (MARMC), which is owned by defendant Farmington Missouri Hospital Company, after falling at his home. He was not released from MARMC after being treated, however, but instead was admitted to Behavioral Health in MARMC's geriatric ward and was given psychotropic medications as ordered by defendant Dr. Ahmad Ardekani. Wann alleges that as a result he experienced hallucinations and confusion. Dr. Ardekani and defendant MSW Nicole Rotter participated in Wann's care while he was admitted to MARMC's geriatric ward, each signing Wann's Interdisciplinary Treatment Plan upon his admission. During this admission, MSW Rotter noted in Wann's medical record that he had had a major decline in life skills and could not reside alone because of his lack of cognitive abilities.

On May 16, MSW Rotter sent Wann's information to the St. Francois County

Public Administrator to begin guardianship and/or conservatorship proceedings. Although Wann was scheduled to be released from MARMC on May 16, Dr. Ardekani and MSW Rotter extended Wann's release date to May 24.

On May 17, the public administrator filed a petition in probate court for the emergency appointment of a temporary guardian on behalf of Wann. The petition was accompanied by Dr. Ardekani's deposition. While this petition was pending, Dr. Ardekani and MSW Rotter extended Wann's MARMC release date from May 24 to May 30, and later extended the release date to June 6. On June 4, however, Wann was transferred to another care facility, The Arbors (which is operated by defendant Americare), whereupon he continued to receive psychotropic medications.

On June 13, the probate court entered a consent judgment appointing the public administrator as temporary guardian *ad litem* over Wann and as temporary conservator *ad litem* over his estate.

On January 30, 2014, the probate court permitted Wann to return to his private residence. The public administrator's appointment as temporary guardian was continued, however, through June 2014. The remainder of the case was terminated in July 2014.

The claims remaining in this cause of action are brought in Counts 3 through 6 of the complaint against Farmington, Dr. Ardekani, MSW Rotter, and Americare.

These claims of unlawful imprisonment (Count 3), unlawful imprisonment by chemical restraint and battery (Count 4), intentional infliction of emotional distress (Count 5), and negligent infliction of emotional distress (Count 6) are based on Wann's assertions that he was involuntarily medicated with psychotropic medications that caused him to experience hallucinations and to be diagnosed as having an altered mental state, and that the continued administration of such medication was done for the purpose of maintaining his altered mental state so that he would remain subject to residential care through the guardianship/ conservatorship proceedings.

**DISCUSSION**

Each remaining defendant has filed a motion to dismiss Wann's remaining claims for his failure to comply with Mo. Rev. Stat. § 538.225, which requires:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

Mo. Rev. Stat. § 538.225.1. A separate affidavit must be filed for each named defendant not later than ninety days after the filing of the complaint, unless the time is extended by the court for a period not to exceed an additional ninety days. Mo.

Rev. Stat. §§ 538.225.4, 538.225.5. "If the plaintiff or his attorney fails to file such affidavit the court shall, upon motion of any party, dismiss the action against such moving party without prejudice." Mo. Rev. Stat. § 538.225.6. This statute applies to state law tort claims brought in federal court based on the provision of health care services. *Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 242 (E.D. Mo. 2004).

In determining whether Wann was required to file health care affidavits under the statute, I must consider whether the relationship between the parties is one of health care provider and patient, and whether the "true claim" relates only to the provision of health care services. *Crider v. Barnes-Jewish St. Peters Hosp., Inc.*, 363 S.W.3d 127, 130 (Mo. Ct. App. 2012). This analysis applies no matter how Wann characterizes his claims, *id.*, even if they are couched in terms of intentional tort. *J.K.M. v. Dempsey*, 317 S.W.3d 621, 626-27 (Mo. Ct. App. 2010); *St. John's Reg'l Health Ctr., Inc. v. Windler,* 847 S.W.2d 168, 170-71 (Mo. Ct. App. 1993). *See also Budding v. SSM Healthcare Sys.*, 19 S.W.3d 678, 680 (Mo. banc 2000) (legislature's use of the words "any action" in § 538.225 shows its intent that the statute not be limited to only negligence actions). In making this determination on a motion to dismiss, I look to the facts as they are alleged in the complaint. *See Jacobs v. Wolff*, 829 S.W.2d 470, 472-73 (Mo. Ct. App. 1992).

As used in § 538.225, the term "health care provider" means

> any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility including those licensed under chapter 198, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate[.]

Mo. Rev. Stat. § 538.205(5).  The term "health care services" is defined as

> any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized.  Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized[.]

Mo. Rev. Stat. § 538.205(6).

**Defendants Farmington, Dr. Ardekani, and Americare:**

In his complaint, Wann identifies Farmington Missouri Hospital Company as the owner or controller of MARMC, a medical center where he was taken to receive medical care, was ultimately admitted to the geriatric unit, and received psychotropic medications that rendered him incapacitated.  Dr. Ardekani is identified as a licensed physician who was a psychiatrist with hospital privileges at MARMC in the geriatric unit.  Finally, Wann identifies Americare as the assisted care facility where he was confined after leaving MARMC's geriatric unit.  Given Wann's identification of these defendants as a hospital, physician, and long-term care facility, they are considered to be "health care providers" for purposes of §

538.225.

Further, the allegations in Wann's complaint arise out of the manner and method by which these defendants provided health care services to him. Although he couches his claims as ones for unlawful imprisonment, unlawful imprisonment by chemical restraint and battery, and intentional and negligent infliction of emotional distress, a review of the allegations within each of these claims shows that they all arise out of and relate only to defendants' provision of health care services, and specifically, that they:

>    \*   falsely asserted he was unstable in order to admit him to the MARMC geriatric ward;
>
>    \*   refused to release him on his scheduled release dates;
>
>    \*   gave him psychotropic drugs without his consent for the purpose of falsely imprisoning him in the MARMC geriatric ward;
>
>    \*   made false representations in reports in order for the public administrator to procure temporary guardianship/conservatorship over him and his estate;
>
>    \*   kept him falsely imprisoned at The Arbors where he was given psychotropic drugs without his consent;
>
>    \*   which caused him to suffer emotional distress and physical stress.

All of these claims relate solely to the wrongful acts of the health care providers in providing health care services to Wann, and the damages he seeks are for his personal injuries. *See Windler,* 847 S.W.2d at 172 ("personal injuries" include "all actions for injuries to the person, whether to the person's rights or to the person's

body."). The true claims in these counts of the complaint are therefore within the statute requiring a health care affidavit. *Mello v. Giliberto*, 73 S.W.3d 669, 679 (Mo. Ct. App. 2002) (statute applied to all claims raised in plaintiff's complaint, including claims of battery, lack of informed consent, and violations of state policies on care and treatment of elderly). *See also Vitale v. Sandow*, 912 S.W.2d 121 (Mo. Ct. App. 1995) (affidavit required for claim of libel because doctors' challenged statements constituted their medical diagnosis and evaluation of plaintiff's condition); *Windler*, 847 S.W.2d at 170-71 (affidavit required for claim of false imprisonment where the basis for the claim was the incorrect medical determination that plaintiff needed to be confined in psychiatric hospital); *Jacobs,* 829 S.W.2d at 472-73 (affidavit required for claim of negligence against nurse who, *inter alia*, allegedly submitted false report regarding plaintiff's activities during rehabilitation).

Although Wann argues that the defendants are precluded from claiming that they provided health care services to him, given that their answers to his complaint contained general denials of the alleged conduct, I am limited to the allegations of the complaint when determining defendants' motions to dismiss. Because the gravamen of all of Wann's remaining tort claims against these health care provider-defendants relate only to alleged injuries that arose out of their rendering of health care services to him, Wann was required to file an appropriate affidavit as to each of these defendants under § 538.225. Wann failed to file such affidavits

within the time permitted under the statute. I therefore must grant these defendants' motions to dismiss for Wann's failure to comply with § 538.225.

Accordingly, Wann's claims of unlawful imprisonment, unlawful imprisonment by chemical restraint and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress – raised in Counts 3 through 6 of his complaint – are dismissed without prejudice as to defendants Farmington, Dr. Ardekani, and Americare.

**Defendant MSW Rotter:**

With respect to Wann's claims against MSW Rotter, however, there are no facts alleged in Wann's complaint to support a finding that she is a health care provider as defined under the statute. In his complaint, Wann identifies MSW Rotter as a "social worker with hospital privileges at MARMC, Geratric Unit, and upon information and belief was an employee of MARMC." (Compl., ECF 1 at para. 8.) He claims that Rotter participated in his care during his admission to MARMC's geriatric ward, made notations in his medical record regarding his ability to engage in life skills, sent information to the public administrator regarding guardianship and/or conservatorship proceedings, and participated with Dr. Ardenaki to extend Wann's release date from MARMC.

While these are arguably "health care services" as that term is defined, there is nothing in the complaint demonstrating that MSW Rotter meets the statutory

definition of "health care provider." Her status as an MSW is not within the delineated health care positions listed in the statute; nor is there any factual basis in the complaint that would lead me to believe that she is "any other person . . . that provides health care services *under the authority of a license or certificate*." While I understand that "licensed persons . . . providing health-care services constitute[] 'health care providers,' even though they [are] not specifically listed in the statute," *State ex rel. Red Cross Pharm., Inc. v. Harman*, 423 S.W.3d 258, 263-64 (Mo. Ct. App. 2013), they nevertheless must be licensed or certified to provide such services. In Missouri, an MSW – that is, a person holding a master's degree in social work – is not required to be licensed in order to hold herself out to be a social worker. *See* Mo. Rev. Stat. § 337.604.

Nothing in Wann's complaint shows that MSW Rotter is licensed or certified to provide health care services. She therefore is not considered to be a health care provider for purposes of the affidavit requirement of § 538.225, and her motion to dismiss for Wann's failure to file such an affidavit will be denied.

## CONCLUSION

To summarize, the claims raised against defendants Farmington Missouri Hospital Company, Dr. Ahmad Ardekani, and Americare at Maplebrook Assisted Living in Counts 3 through 6 of the complaint are dismissed without prejudice. Accordingly, no claims remain in this cause of action against these defendants. The

claims will go forward against defendant MSW Rotter, however. She therefore remains a defendant in this action on the following claims: Count 3 (unlawful imprisonment), Count 4 (unlawful imprisonment by chemical restraint and battery), Count 5 (intentional infliction of emotional distress), and Count 6 (negligent infliction of emotional distress).

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Ahmad Ardekani, M.D.'s Motion to Dismiss for Failure to File a Healthcare Affidavit in Compliance with Mo. Rev. Stat. § 538.225 [101] is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Ahmad Ardekani, M.D.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim [99] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that defendant Americare at Maplebrook Assisted Living's Motion to Dismiss for Failure to File a Healthcare Affidavit in Compliance with Mo. Rev. Stat. § 538.225 [106] is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Farmington Missouri Hospital Company's and Nicole Rotter's Motion to Dismiss for Failure to File a Healthcare Affidavit in Compliance with Mo. Rev. Stat. § 538.225 [108] is **GRANTED** as to the claims raised against defendant Farmington Missouri Hospital Company and **DENIED** as to the claims raised against Nicole Rotter**.**

**IT IS FURTHER ORDERED** that Counts 3, 4, 5, and 6 of plaintiff's complaint are dismissed without prejudice against defendants Farmington Missouri Hospital Company, Dr. Ahmad Ardekani, and Americare at Maplebrook Assisted Living.

**IT IS FURTHER ORDERED** that Counts 3, 4, 5, and 6 of plaintiff's complaint shall proceed against defendant MSW Nicole Rotter.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of June, 2016.